UNITED STATES *v.* MURPHY.

1  Under the second section of the act of 8th August, 1840, "to regulate the proceedings in the Circuit and District Courts," and which, after authorizing the transfer of criminal causes from either court to the other on motion of the district attorney, says that " the court to which such remission is made, shall, after the order of remission is filed

therein, act and proceed in the case as if the indictment and all the other proceedings in the same had been originated in said court," an indictment may be remitted from the District Court to the Circuit Court, though it have come into the District Court originally only by being sent there from the Circuit Court. And a demurrer to the indictment made in the District Court, may properly receive a joinder in the Circuit Court.

2. The twenty-fifth section of the act of 3d March, 1863, "for enrolling and calling out the national forces and for other purposes," must be construed by the twelfth section of the amendatory act of 24th February, 1864; and so construed it does not embrace services in relation to an *enrolment.*

An act of Congress, passed during the late rebellion, entitled "An act for enrolling and calling out the national forces, and for other purposes," and which has numerous provisions tending to prescribe a mode of giving effect to its purpose, provides in its 23d section, that

"If any person shall resist any draft of men enrolled under this act into the service of the United States, or shall counsel, or aid any person to resist any such draft, or shall *assault or obstruct any officer in making such draft, or in the performance of any service in relation thereto,* or shall counsel any person to assault or obstruct any such officer, such person shall be subject to summary arrest by the provost marshal, and shall be forthwith delivered to the civil authorities, and upon conviction thereof be punished by a fine not exceeding five hundred dollars, or by imprisonment not exceeding two years, or by both of said punishments."

This act was passed March 3, 1863.

On the 24th February, 1864, Congress passed an act amendatory of it. The 12th section of this amendatory act runs thus:

"That any person who shall forcibly resist or oppose any *enrolment,* or shall incite, counsel, encourage, or who shall conspire or confederate with any other person or persons forcibly to resist or oppose any such *enrolment,* or who shall aid or assist, or take any part in any forcible resistance or opposition thereto, or who shall assault, obstruct, impede, or threaten any officer or other person employed in making or aiding to make any such *enrolment,* or employed in the performance, or aiding in the per-

formance of any service in any way relating thereto, &c., shall, upon conviction, be punished by fine not exceeding $5000, or by imprisonment, &c. And in cases where *such* assaulting, &c., shall produce the death of such officer or other person the offender shall be guilty of *murder*, and upon conviction, &c., be punished with death."

The amendatory act repeals so much of the former act as may be inconsistent with it.

In July, 1863, that is to say *before* the passage of the act last mentioned, but after the passage of the one of March 3, 1863, and while *it* alone was in force, a certain Mrs. Murphy, with two other "married women" of Milwaukie, were indicted in the *Circuit* Court for Wisconsin, for assaulting and obstructing Patrick Finney, " *an enrolling* officer" for that district, " duly appointed as such by the board of enrolment organized under and by virtue of an act of the Congress of the United States of America, approved on the third day of March, A. D. 1863, entitled '*An act for enrolling and calling out the national forces, and for other purposes*,' in making a draft of men enrolled under said act into the service of the United States, and in the performance of service in relation thereto, *to wit, in making an enrolment of persons subject to do military duty in said district, for said draft;* and that they then and there did violently strike and beat the said Patrick, *enrolling* officer as aforesaid, by means whereof he was grievously hurt and wounded; and did counsel certain persons to assault and obstruct the said Patrick, enrolling officer as aforesaid, against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided."

The indictment thus pending in the *Circuit* Court, that court, in October, 1863, remitted the case, on motion of the district attorney, to the *District* Court, where the defendants filed a general demurrer. In April, 1864, the District Court on the motion of the same district attorney, remitted the case *back* to the Circuit Court; and in this last court the United States joined in the demurrer.

These remissions, forward and back, were conceived by

the district attorney to be warranted by the act of Congress of 8th August, 1846. That act thus ran:

"Whenever the district attorney shall deem it necessary, it shall be lawful for any Circuit Court, in session, by order entered on its minutes, to remit to the next term or session of the District Court of the same district any indictment pending in the said Circuit Court, when the offence or offences therein charged may be cognizable by the said District Court; and in like manner it shall be lawful for any District Court to remit to the next term or session of the Circuit Court of the same district any indictment pending in the said District Court; and such remission shall carry with it all recognizances, processes, and pleadings pending in the case in the court from which the remission is made, *and the court to which such remission is made shall, after the order of remission is filed therein, act and proceed in the case as if the indictment and all other proceedings in the same had been originated in said court.*"

The demurrer coming on to be argued, the Circuit Court was divided in opinion as to the questions:

1st. Whether the court had jurisdiction, the indictment having been found in the Circuit Court, remitted to the District Court, and by the District Court again remitted into this court.

2d. Whether the offence charged in the indictment, namely, an assault and obstruction of an officer in making an enrolment of men for military duty, is embraced in the 25th section of the act of 1863, as an assault or obstruction of an officer in making the draft or in the performance of services in relation thereto.

And these two questions were now here for resolution.

*Mr. Assistant Attorney-General Ashton argued them in behalf of the United States ; no one contra.*

Mr. Justice MILLER delivered the opinion of the court.

We are of opinion that under the circumstances of this case, the Circuit Court had jurisdiction of the cause.

We see no reason in the nature of the transaction, nor in

the language of the statute of 8th of August, 1846, under which the remission is supposed by the counsel of the United States to be justified, why a case brought into the District Court by an order of this kind should not be sent back under proper circumstances. The order can only be made on the motion of the district attorney, or whenever in the opinion of the District Court difficult and important questions of law are involved in the case. There is, therefore, no danger of collision between the courts on account of such orders; and as they tend to the despatch of business, and to sound decisions on legal propositions, there is no reason for limiting the rule further than the language of the statute requires.

*As respects the second question.*—The defendants were indicted for assaulting an officer while engaged "in making an enrolment of men subject to do military duty." This language describes with entire accuracy the offence provided for by the 12th section of the act of February 24, 1864. But the indictment was found before that act was passed. It was found under the 25th section of the act of March 3, 1863, on the supposition that making an enrolment was a service relating to the draft; and the judges divided on the question whether this was so, within the meaning of the last-mentioned act.

If Congress had not passed the amendatory act of February 24, 1864, it might very well have been asserted that making an enrolment of persons liable to draft, was a service relating to the draft; for being a necessary preliminary to putting the draft in force, it bears a very close relation to it. We have, however, held in the case of the *United States* v. *Scott,* just preceding, upon a comparison of the 25th section of the act of 1863, with the 12th section of the act of 1864, that the one is limited to the prevention of resistance to the draft, and the other to preventing resistance to the enrolment. Comparing the two acts together, the later one must be held to be a legislative construction of the first, by which a service in relation to the enrolment cannot be held to be a service in relation to the draft.

The first of the questions certified to us must be answered in the affirmative, and the second in the negative.

ANSWERS ACCORDINGLY.