## UNITED STATES *v.* HAYNES.

*(District Court, D. Massachusetts. January 22, 1887.)*

1. CRIMINAL LAW—REMITTING CASE—REV. ST. U. S. §§ 1037, 1038.
   Under Rev. St. U. S. §§ 1037, 1038, giving the circuit or district court authority to remit any indictment pending therein to the next session of the district court, if in the circuit court, and to the next session of the circuit court, if in the district court, the *order so remitting* may be made at any time after the indictment has been presented until it has been finally disposed of.

2. SAME—DECISION.
   When a case has been remitted from a United States district to a United States circuit court, or *vice versa*, and the only question open in the court so receiving it is one of law, it may be decided there; but, if a re-examination of the facts becomes necessary, the matter can be heard by the judge of the court from which the case was remitted, or it can be remanded back to that court.

3. SAME—PROCEDURE AFTER CASE HAS BEEN REMITTED.
   When a case has been so remitted under the provisions of Rev. St. U. S. §§ 1037, 1038, the practice is for the court receiving the case to proceed with it from the point it had reached in the court remitting it.

4. SAME—PROCEDURE WHEN A CASE HAS BEEN IMPROPERLY TAKEN FROM ONE COURT TO ANOTHER.
   When a case has been taken from a lower court to the supreme court, or a circuit court of the United States, improperly, the court does not render a judgment that settles the rights of the parties finally, but remands it back to the court from whence it came, that further proceedings may be had there.

5. CONSTITUTIONAL LAW — POWERS OF CONGRESS — JURISDICTION OF UNITED STATES COURTS.
   Under the constitution of the United States, congress has no power to enlarge or restrict the original jurisdiction of the supreme court of the United States, but the jurisdiction of inferior courts is subject to the absolute control of congress, and may be changed or taken away, at its pleasure.

6. SAME—JURISDICTION TO RE-EXAMINE ON APPEAL FACTS TRIED BY A JURY.
   Under the seventh amendment to the constitution of the United States, the courts of the United States, as courts of appeal, have no jurisdiction to re-examine any facts tried by a jury in any other manner.

7. SAME—TRANSFER OF CASES FROM ONE UNITED STATES COURT TO ANOTHER.
   The seventh amendment to the constitution of the United States does not prohibit congress from directing the transfer of cases, after verdict, from one federal court to another having co-ordinate jurisdiction, and not an appellate court.

8. CRIMINAL LAW—JUDGMENT—ARREST—BILL OF EXCEPTIONS—REMISSION OF INDICTMENT.
   Under practice in the United States courts, a bill of exceptions is not necessary to bring before the court a question of law raised by a motion in arrest of judgment for defects in the indictment, but, with the concurrence of the court and the district attorney, the case can go up in the form of a remission of the indictment.

*Ex parte.*

Indictment under Rev. St. U. S. § 5480, for taking letters from the post-office in the execution of a scheme to defraud.

*G. M. Stearns,* Dist. Atty., for the United States.

NELSON, J. This case, originally two indictments, but tried together as one, was heard by the court upon the application of the district attorney of the United States for a warrant to issue for the arrest of the

defendant. Its history, as gathered from the records and proceedings in this court and in the circuit court, is as follows:

The defendant, William Haynes, at the September term of this court for 1884, was indicted, tried, and found guilty by the jury of the offense of taking letters from the post-office in Boston, in the execution of a scheme to defraud, to be effected by opening correspondence with others by means of the post-office establishment of the United States, in violation of Rev. St. § 5480. It was proved at the trial that the defendant, under the name of the Lyons Silk Company, circulated through the post-office an advertisement stating that, to close out remnants, he would send by mail, post-paid, pieces of silk, all of one color or assorted, suitable for making and repairing dresses and other garments, 6 pieces for 35 cents, 12 for 60 cents, and 24 for $1, none less than seven-eighths of a yard in length; and that in answer to this advertisement he received through the mail letters inclosing money from persons who supposed they were to receive in return pieces of silk cloth, but the defendant sent them instead pieces of silk sewing thread. It appeared that, by this abominable cheat, he had succeeded in defrauding the public out of a large amount of money. Other transactions of a similar character were also proved against him. After the verdict, he filed a bill of exceptions to the rulings of the presiding judge at the trial, but this was never presented to the judge for allowance, and was in fact waived. He also filed in the district court a motion in arrest of judgment for alleged defects in the indictment.

At this stage of the case the indictment was remitted to the circuit court, on motion of the district attorney, under Rev. St. § 1037. In the circuit court the motion in arrest of judgment was heard before Judge WEBB, in November, 1884, and overruled, and the case then stood for sentence. The defendant thereupon forfeited his bail, and left the country, and a default was entered on his bail-bond.

In February, 1885, he applied, through his counsel, to the circuit court, for leave to file a new motion in arrest of judgment, upon the ground, among others, that the district court had no jurisdiction "under section 1037" to remit the indictment after verdict. This application was granted, upon the condition that he should furnish new bail for his appearance in the circuit court, and this condition he complied with. The motion was heard before the circuit judge; and in March, 1886, an opinion was filed sustaining the motion, and holding that the action of the district judge in remitting the indictment after verdict was in violation of that clause of the seventh amendment to the constitution of the United States which declares that "no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law." *U. S.* v. *Haynes*, 26 Fed. Rep. 857. The entry on the docket of the court was in this form: "The motion in arrest of judgment is sustained."

From the facts detailed above, it is impossible to come to any other conclusion than that a mistake, doubtless through inadvertence, occurred in this case in the circuit court. There was no question before that court

which required any re-examination of the facts tried by the jury. The defendant filed no motion to set aside the verdict as against the evidence, either in this court or in the circuit court. The only question left open when the case went to the circuit court was a pure question of law apparent on the record, raised by the motion in arrest of judgment. It is difficult to perceive how the constitution could be violated by deciding that question in the circuit court. If a question had arisen there requiring a re-examination of the facts, it could have been heard by the district judge who presided at the trial in the district court, or the case could have been remitted back to the district court. *U. S.* v. *Murphy,* 3 Wall. 649.

It would also seem that a mistake occurred, also doubtless by inadvertence, in ordering judgment to be arrested. Having decided that the case was not lawfully in the circuit court, the thing to do, according to the usual practice, was to remand it to the district court. When a case has been taken to the supreme court improperly, the court does not render a judgment that settles the rights of the parties finally, but remands it back to the court from whence it came, that further proceeding may be had there. The practice has been the same in the circuit court. That would seem to be what the circuit court should have done in this case. As it now stands, the defendant has been lawfully convicted on a good indictment; but judgment has been arrested by another court, which has decided, and had the right to decide, that it had no jurisdiction of the case. It is probable, if again put upon his trial on a new indictment, the defendant could invoke the protection of that clause of the fifth amendment to the constitution, which says, "nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb," as successfully as he has already invoked that of the seventh amendment. It would thus appear that, though lawfully convicted, he is to escape all punishment for his crime, his bail is to be discharged, and public justice completely thwarted. This must inevitably be the result if the arrest of judgment in the circuit court is to have the effect which usually follows such a judgment in a court having jurisdiction to render it.

A review of the legislation of congress, and the decisions of the courts, will show that, "according to the rules of the common law" as administered in the courts of the United States, the circuit court had ample jurisdiction to re-examine the facts tried by the jury, had there been occasion for such re-examination.

Rev. St. § 1037, enacts as follows:

"Whenever the district attorney deems it necessary, any circuit court may, by order entered on its minutes, remit any indictment pending therein to the next session of the district court of the same district, when the offense charged in the indictment is cognizable by the said district court; and in like manner any district court may remit to the next session of the circuit court of the same district any indictment pending in the said district court. And such remissions shall carry with it all recognizances, processes, and proceedings pending in the case in the court from which the remission is made; and the court to which such remission is made shall, after the order of remission

is filed therein, act in the case as if the indictment, and all other proceedings in the same, had been originated in said court."

Section 1038 is as follows:

"Any district court may, by order entered on its minutes, remit any indictment pending therein to the next session of the circuit court for the same district, when, in the opinion of such district court, difficult and important questions of law are involved in the case; and thereupon the proceedings in such case shall be the same in the circuit court as if such indictment had been originally found and presented therein."

These sections are reproduced from the procedure act of August 8, 1846, (9 St. 72;) section 1037 being taken from the second section, and section 1038 from the third section, of that act.

The object of this legislation was twofold: *First*, speedy trials for persons charged with crime, and dispatch of the public business; and, *second*, to furnish a method by which questions of law arising in criminal cases in the district court could be taken to the higher courts,—no provision for this having been made in the act of August 23, 1842, (5 St. 516,) which first gave to the district courts concurrent jurisdiction with the circuit courts of all crimes and offenses against the United States, not capital.. Section 3. It gave to the district courts discretionary power, on motion of the district attorney, or on its own motion, if he did not apply, to remit cases involving points of law of difficulty and importance to the circuit court, from which it might go, by a certificate of division of opinion under the act of April 29, 1802, § 6, (2 St. 159; Rev. St. § 651,) to the supreme court. The act fixed no limits to the power, except that the indictment should be "pending," and in one case the motion of the district attorney should be made, and in the other the court should be of opinion that difficult and important questions were involved. The motion might be presented, or the question of law developed, after verdict as well as before; but, when these conditions did occur, the act was explicit and imperative that the order might be made. It could be done at any time while the case was pending; that is, from the time the indictment was presented till final judgment. The meaning is as plain as words can make it. An acquittal is undoubtedly a final judgment within the statute; but a conviction certainly is not. *U. S.* v. *Morris, infra; Com.* v. *Lockwood,* 109 Mass. 323.

It was decided by Mr. Justice CURTIS in *U. S.* v. *Morris,* 1 Curt. 23, that under this act, after the jury had been impaneled and witnesses examined, the district court had power to stop the trial, and discharge the jury, and order the indictment to be remitted to the circuit court. The records of this court show that the judge who made the order in the district court was Judge SPRAGUE. That case was one of great public interest at the time, as it grew out of the rescue by a mob of the fugitive slave Shadrach from the custody of the United States marshal, and it consequently received from Judge CURTIS the most careful consideration. In an elaborate judgment, he held that indictments were "pending," within the meaning of the act, after they were presented, and their pendency continued till finally disposed of; and that "the natural meaning

of this clause is that the order to remit is to be made when the court has arrived at the opinion that difficult and important questions of law are involved in the case, and that the act prescribes no limit of time within which such opinion is to be formed." He further said, (page 33:)

"I am of opinion, therefore, that the natural meaning of the language of this third section empowers the district court to remit to this court an indictment pending therein, * * * after any proceedings have been had therein which do not amount to a bar to a future trial; that the subject-matter of the act does not call for a restricted interpretation of its language."

It will appear from another part of his opinion quoted subsequently that Judge CURTIS meant, by "a bar to a future trial," an acquittal in the lower court.

That case arose under section 3, the district court having certified that difficult and important questions of law were involved. But the language of section 2 is equally broad, and it is evident that the order may be made under one section at whatever stage it may be made under the other. The case of *U. S.* v. *Murphy*, cited *supra*, arose under section 2 of the act of 1846. It was said in that case, referring to orders of remission under the act, the opinion being by Mr. Justice MILLER:

"The order can only be made on the motion of the district attorney, or whenever, in the opinion of the district court, difficult and important questions of law are involved in the case. There is therefore no danger of collision between the courts on account of such orders; and as they tend to the dispatch of business, and to sound decisions on legal propositions, there is no reason for limiting the rule further than the language of the statute requires."

There is not the least intimation in these cases that the act, when construed in the broadest manner, contravenes this clause of the seventh amendment.

Under these sections the practice has been for the circuit court to proceed with the case from the point it had reached in the district court. In *U. S.* v. *Murphy*, *supra*, issue was joined in the circuit court on a demurrer filed in the district court; and in *U. S.* v. *Richardson*, 28 Fed. Rep. 61, the case was heard in the circuit court, before Mr. Justice GRAY, on a special plea filed in the district court.

It was decided in *Parsons* v. *Bedford*, 3 Pet. 433, that by force of this clause of the seventh amendment the supreme court, as a court of appeal, had no jurisdiction to re-examine facts tried by a jury in a circuit court of the United States. In *The Justices* v. *Murray*, 9 Wall. 274, it was held that under the same clause it could not re-examine facts tried by a jury in a state court. See, also, *Wetherbee* v. *Johnson*, 14 Mass. 412, 420; *Bryant* v. *Rich*, 106 Mass. 180, 193. The learned circuit judge cites, as authority for his conclusion, a passage from the opinion of Mr. Justice STORY in *Parsons* v. *Bedford*, which is referred to with approval in *Justices* v. *Murray*. Judge STORY, in commenting on this clause of the seventh amendment, says:

"This is a prohibition to the courts of the United States to re-examine any facts tried by a jury in any other manner. The only modes known to the common law to re-examine such facts are the granting of a new trial by the

court where the issue was tried, or to which the record was properly returnable, or the award of a *venire facias de novo* by an appellate court for some error of law which intervened in the proceedings."

But it is evident that this language was used in both cases with reference to the question before the court, and was not intended to lay down the broad doctrine that congress was prohibited by this clause in the constitution from directing the transfer of cases, after verdict, from one federal court to another having co-ordinate jurisdiction, and not an appellate court.

The original jurisdiction of the supreme court of the United States is conferred by the constitution, and congress has no power to enlarge or restrict it. But the jurisdiction of inferior courts is derived from and is subject to the absolute control of congress, and may be changed or taken away at its pleasure. Existing courts may be abolished, and their jurisdiction, and all cases pending in them, whatever their condition, transferred to other existing courts, or to new courts. Repeated instances might be cited where congress has exercised this power. The celebrated act of April 29, 1802, (2 St. 156,) is one. It annulled the courts established by the act of February 13, 1801, (2 St. 89,) and ordered the transfer of all cases pending in them to the present circuit courts, which it created. The constitutional validity of the ninth section, which directed the remission of the cases, was upheld by the supreme court in *Stuart* v. *Laird*, 1 Cranch, 299; the court saying:

"Congress have constitutional authority to establish, from time to time, such inferior tribunals as they may think proper, and transfer a cause from one such tribunal to another. In this last particular there are no words in the constitution to prohibit or restrain the exercise of legislative power."[1]

The act of March 3, 1863, (12 St. 762,) is another illustration in point. It abolished the circuit, district, and criminal courts of the District of Columbia, and transferred all their cases to the supreme court of the district. The various acts transferring cases pending in the territorial courts to the district and circuit courts of the United States, on the admission of new states, are also instances. In all such legislation the new courts are merely substitutes for the old courts, and, as regards their jurisdiction and capacity to dispose of cases remitted to them, are the same courts. Power to re-examine facts tried by a jury goes with the cases as a matter of course. No one ever supposed that this legislation was prohibited by the seventh amendment. It has never been thought, at least before this case, that, in order to comply with this part of the constitution, it was necessary to keep the abolished court in existence solely for the purpose of re-examining facts tried by the jury, or that the judge who presides at a jury trial was the only judge constitutionally qualified to re-examine the fact found by the verdict. Such statutes have been assailed in the courts upon almost every conceivable ground, but never

---

[1] For an historical sketch of the political controversies out of which sprung the act of February 13, 1801, and its repeal by the act of April 29, 1802, see an interesting article upon "The United States Courts," in the American Law Review, 1875-76, vol. 10, p. 398, by Mr. C. H. Hill, then assistant attorney general of the United States.

until this case as in contravention of this clause of the constitution. Authority to enact them is derived from article 3, § 1, of the constitution, which declares that "the judicial power of the United States shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish." The doctrine of *Parsons* v. *Bedford* and *The Justices* v. *Murray* has no application to these provisions of the act of 1846. The case of *Stuart* v. *Laird*, though one of the famous constitutional judgments of the supreme court, is not cited as having any bearing on the question under consideration in either of those cases; and in neither of them is there a word to be found from which it can be inferred that the court intended to cast any doubt on that case, much less overrule it. Its authority, so far as I have been able to ascertain, has never been doubted. By force of these provisions of the act of 1846, the cases go from the district court to the circuit court as to a court of concurrent jurisdiction, and not as to a court of appeal. Construed as broadly as they were by Judge CURTIS in *U. S.* v. *Morris*, and by the supreme court in *U. S.* v. *Murphy*, their constitutionality rests upon exactly the same ground that supports the acts of 1802 and 1863, and other similar statutes.

As above observed, the judge who presides at the trial in the district court is also a judge of the circuit court, and a question arising on the facts in the latter court can always be heard by him; or the case can be remitted back to the district court for the purpose of having such a question settled there. In addition to this, any possible injustice to the accused can always be prevented by granting him a new trial in the circuit court. In *U. S.* v. *Morris* (page 33) Judge CURTIS said:

"It may well be that congress intended that a case remitted to the circuit court, because it involved questions of law so important and difficult that the interests of public justice and the rights of the immediate parties required that [district] court not to try and determine it, should be tried in the circuit court *de novo* from the beginning. This might be an advantage to the prisoner; for it gives him an opportunity to plead anew. But it is suggested that it may, in some cases, be injurious to him, because there may be something on the record below of which he could avail himself by motion; but, if the proceedings below do not come up, he must plead the matter specially, and thus, not only be put in jeopardy of failing upon some technical point, but subjected to a final judgment if he should fail. But, under the laws of the United States, I know of only one matter which must be pleaded specially; that is, a former acquittal or conviction for the same offense. Everything else may be given in evidence under the general issue. But if the defendant has been acquitted in the district court, the indictment is no longer pending there, and so cannot be remitted here; and if it were to be so remitted, the court would, upon motion and production of the record of the district court, dismiss it; the defendant would not be put to plead at all. The court has gone much further than this in *U. S.* v. *Coolidge*, 2 Gall. 364. And if the defendant were convicted in the district court, and the case were one in which a new trial can be had, the defendant can have no cause to complain that he gets one by having the case certified here."

See, also, *The King* v. *Baker*, Carth. 6; *Warrain* v. *Smith*, 2 Bulst. 146; *The King* v. *Oxford*, 13 East, 411; *The King* v. *Nichols*, Id. 412. The

case of *U. S.* v. *Cummins*, 3 Pittsb. Leg. J. 405, can hardly be called an authority. The case is very briefly reported, and all that appears is that one of the counsel stated that the judge of the circuit court had decided that after conviction a case could not be properly certified from one court to the other.

According to the decision of the circuit court in this case, prior to the act of March 3, 1879, (20 St. 354,) giving to circuit courts appellate jurisdiction in certain criminal cases, there was no way by which questions of law arising in such cases, after conviction, could be taken from the district to the higher courts; and in cases not within that act no way exists now. A bill of exceptions is not necessary to bring before the court a question of law raised by a motion in arrest of judgment for defects in the indictment. As a practical question, it would seem an unnecessary hardship to compel a defendant to resort to the complicated and costly remedy of a bill of exceptions and writ of error, when, with the concurrence of the court and the district attorney, the case can go up in the simple and inexpensive form of a remission of the indictment. Questions occurring on motions in arrest of judgment for the insufficiency of the indictment are among those that may be certified to the supreme court under Rev. St. § 651. *U. S.* v. *Carll*, 105 U. S. 611; *U. S.* v. *Rauscher*, 119 U. S. 407; S. C. 7 Sup. Ct. Rep. 234.

It is now claimed by the government that, as the circuit court has decided that the district court had no authority to remit the indictment, the case has never, in contemplation of law, been out of this court, and further proceedings can be taken here. That decision is undoubtedly the law of this case; and the proposition of the government is correct, unless the arrest of judgment in the circuit court has the effect to suspend judgment here as well as in that court. An extended record of the proceedings here was made before the case went up. Copies also of the indictments were retained here. The circuit court has recently ordered the return of the original indictments and other papers to this court. The record here has also been amended by striking out the order of remission. The second motion in the circuit court set up other grounds for arresting judgment than that passed upon by the court, but as they are the same in substance as those overruled by Judge WEBB in the first motion, and as there is nothing on the record to indicate that leave to file the second motion was intended as granting a rehearing on the first motion, they may be regarded as merely surplusage. For the purposes of the motion now before the court, I am disposed to sustain the point taken by the government, and to hold that the judgment of the circuit court was, in effect, an arrest of judgment in that court only, for want of jurisdiction; that the case is still here, unaffected by the order of remission and the proceedings in the other court; and that this court has therefore authority to order a warrant to issue for the arrest of the defendant.

The case having been heard *ex parte*, this conclusion is, of course, subject to reconsideration, after the defendant has had an opportunity to be heard. Warrant to issue.