INTERNATIONAL LONGSHOREMEN'S AND WARE-
HOUSEMEN'S UNION (CIO): LOCAL 144 OF
THE INTERNATIONAL LONGSHOREMEN'S AND
WAREHOUSEMEN'S UNION (CIO): UNIT 1, LO-
CAL 144 OF THE INTERNATIONAL LONGSHORE-
MEN'S AND WAREHOUSEMEN'S UNION (CIO):
JOSEPH KAHOLOKULA, SEICHI DOI, HARRIS
YOSHIO NAGATA, BENJAMIN AWANA, FRANK
MATSUI, GEORGE FERNANDEZ, ERNEST FER-
NANDEZ, CHARLES REVERA, JOHN DOE, MARY
DOE, RICHARD DOE, ET AL. v. CABLE A. WIRTZ
AS JUDGE OF THE CIRCUIT COURT OF SECOND
JUDICIAL CIRCUIT OF THE TERRITORY OF
HAWAII AND MAUI AGRICULTURAL COMPANY,
LIMITED.

No. 2637.

ARGUED NOVEMBER 14, 1946.        DECIDED DECEMBER 4, 1946.

KEMP, C. J., LE BARON, J. AND CIRCUIT JUDGE
PENCE IN PLACE OF PETERS, J., ABSENT.

Opinion of the Court by Le Baron, J.

The petitioners filed in this court their petition for
writ of prohibition to prevent the respondents from pro-
ceeding further in, except to dismiss, a certain equity case
pending below in the circuit court of the second judicial

circuit of the Territory of Hawaii. The grounds of the petition are (1) that the case involves and grows out of a labor dispute within the meaning of the Norris-LaGuardia Act of Congress (Act of March 23, 1932, 47 Stat. 70, c. 90, §§ 1-15; U. S. C. [1940] Tit. 29, §§ 101-115), (2) that the second circuit court is a "court of the United States" as defined by and within the meaning of the Act and (3) that the respondent Wirtz as judge thereof issued at the instance of the other respondent a restraining order against the petitioners which, although admittedly in conformity with the laws of the Territory, was not in strict conformity with the provisions of the Act. A temporary writ of prohibition was duly issued. The respondents answered and admitted therein the first and third ground of the petition but denied the second, alleging that the Act of Congress does not apply to circuit courts of the Territory of Hawaii.

The pleadings present but one question of law. Is a circuit court of the Territory a "court of the United States" as defined by and within the meaning of the Norris-LaGuardia Act so as to render its provisions applicable? The answer depends upon the legislative intent of Congress. Preliminary to the determination of that intent, it is proper to ascertain whether the Act is an original enactment or merely an amendatory one.

Considering the Act including its caption as a whole, it is clearly and unmistakably not an original enactment but in the nature of an amendatory Act in the sense that it relates to the same subject matters dealt with by a prior and existing statute. This is forcibly brought out by the Supreme Court of the United States in *United States* v. *Hutcheson*, 312 U. S. 219, 236, 85 L. ed. 788. In that case the Court said: "The underlying aim of the Norris-LaGuardia Act was to restore the broad purpose which

Congress thought it had formulated in the Clayton Act but which was frustrated, so Congress believed, by unduly restrictive judicial construction." (See Act of Oct. 15, 1914 [38 Stat. 730]. Also *New Negro Alliance* v. *Sanitary Grocery Co.*, 303 U. S. 552, 562, 82 L. ed. 1012.) Consistent therewith, the Norris-LaGuardia Act by its caption "An Act to Amend the Judicial Code * * * "professes to be an emendation of that Code which significantly contains portions of the Clayton Act. At this juncture a brief history of the Judicial Code and its background would not be amiss.

The rudiment of the present federal judicial system of the United States originated in 1781 with the final adoption of the Articles of Confederation under which a congressional court was created, primarily for the purpose of settling boundary disputes between the then States of the Union. This court went out of existence upon the adoption of the Constitution in 1787, which vested "the judicial Power of the United States * * * in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish," the Supreme Court being granted therein appellate jurisdiction generally and original jurisdiction in certain cases. (Const. Art. III, §§ 1, 2.) The federal judicial system, thus installed as an engine in the tripartite machinery of the government of the United States by the terms of its enabling constitutional provision, consists of two classes of courts, —the Supreme Court, fixedly established as the great court of last resort, and that undefined class of inferior courts not even given a name by the Constitution, which courts may be established or abolished and whose jurisdiction may be conferred or defined or enlarged or limited by Congress at will in response to the changing needs of society. (*Kline* v. *Burke Constr. Co.*, 260 U. S. 226, 234,

67 L. ed. 226; *Cinderella Theater Co.* v. *Sign Writers' Local Union*, 6 Fed. Supp. 164, 168; *United States* v. *Haynes*, 29 Fed. 691, 696.) These courts are commonly referred to as federal courts to distinguish them from territorial and state courts. They uniformly have been designated by judicial definition to be "constitutional courts" in contradistinction to "legislative courts," the latter created by Congress under the power granted under Article IV of the Constitution to make "all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." Within the designation of legislative courts are admittedly the circuit courts of the Territory created by the Hawaiian Organic Act of Congress, section 81. (See *Mookini* v. *United States*, 303 U. S. 201, 82 L. ed. 748; *O'Donoghue* v. *United States*, 289 U. S. 516, 77 L. ed. 1356; *McAllister* v. *United States*, 141 U. S. 174, 35 L. ed. 693.)

On March 3, 1911, Congress adopted the present Judicial Code, which as of December 7, 1925, is embodied in the "United States Code" where it occupies the first thirteen chapters of Title 28. (36 Stat. 1087 to 1169, inclusive.) It was the first successful attempt to place in codified form the numerous prior statutes of Congress affecting the federal judiciary. The Code deals primarily with the District Courts, Circuit Courts of Appeals, Court of Claims, Court of Customs and Patent Appeals and Supreme Court of the United States, devoting its first five chapters to the District Courts, its next four *seriatim* to the other courts, the next two to certain of them as courts of the United States and the remaining two of the thirteen chapters to general and repealing provisions affecting the Code. It deals incidentally with territorial and state courts, but only to the extent that the final decisions or judgments of their highest courts may come within the

appellate jurisdiction of the Circuit Court of Appeals and Supreme Court, respectively. The District Courts, Circuit Court of Appeals and Supreme Court, referred to in the Code as "courts of the United States," are constitutional courts and form one federal judicial system. Suggestive of a substantial affinity in jurisdiction and authority, the phrase "any District Court of the United States" is twice mentioned in the alternative with that of "any court of the District of Columbia." (U. S. C. c. 10, §§ 386, 388.) The Court of Claims and Court of Customs and Patent Appeals, referred to in the Code by name only, are legislative courts and are not within the same federal judicial system as District Courts. Nor are their decisions or judgments reviewable in the Circuit Court of Appeals, but in the Supreme Court and no other. (U. S. C. c. 7, § 288, c. 8, § 308.)

The only radical change made by the Judicial Code was the abolition of the Circuit Courts of the United States and the transfer *in toto* of the original jurisdiction they exercised prior to January 1, 1912, to the District Courts of the United States (36 Stat. 1167) which thereby became and now are the only federal courts of first instance, both criminal and civil, at law and in equity. (See *Wogan Bros.* v. *American Sugar Refining Co.*, 215 Fed. 273.) Since its adoption other statutes and portions thereof from time to time have been added but they constitute mere continuations and where its parts relate to the same subject matter their interrelation requires that they all be considered as a whole whenever necessary to the proper interpretation of any of its parts.

The portions of the Clayton Act (Oct. 15, 1914, c. 323, §§ 17-19, 21-25, 38 Stat. 737-740), incorporated into the Judicial Code at the time the Norris-LaGuardia Act was enacted, all appear in chapter ten of the Judicial Code,

constituting sections 381 to 383 and 386 to 390, inclusive, of the United States Code and all relate in subject matter to the Norris-LaGuardia Act. Some likewise relate to and immediately precede section 384 in which appears the phrase "any court of the United States." Such phrase as therein used was held by this court in *Kainea* v. *Kreuger*, 30 Haw. 860, not to apply to circuit courts of the Territory. Others appear under the same caption with section 378 which deals exclusively with the Supreme Court of the United States and the District Courts of the United States. Consonant thereto, section 371 of the United States Code, the first section of the chapter, vests in "the courts of the United States * * * exclusive of the courts of the several states" an eight-point jurisdiction which necessarily in the light of Article III of the Constitution applies exclusively to the Supreme Court and inferior Courts constitutionally ordained thereunder. It is apparent from such close interrelation in considering the chapter as a whole, that courts and any court of the United States are intended to be constitutional courts in the historical meaning thereof. Such historical meaning and that of legislative courts being mutually exclusive of each other, the use of the phrases "courts of the United States" and "any court of the United States" to mean constitutional courts necessarily excludes legislative courts such as circuit courts of the Territory which are not even remotely referred to in the entire Judicial Code.

In professing to amend the Judicial Code and in restoring the contemplated purpose of the Clayton Act, did Congress intend to go beyond the federal judicial system affected thereby and disturb the meaning, established therein, of the phrases "courts of the United States" and "any court of the United States" in so far as it is limited to constitutional courts under Article III? A bare read-

410

ing of section 113 (d) of the Norris-LaGuardia Act as reported in Title 29 of the United States Code suffices to show that it did not. The section reads: "When used in sections 101-115 of this title, and for the purposes of such sections— * * * The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia." In restricting the definitive phrase "any court of the United States" by the clause "whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia," the section accomplishes two primary objectives. Both pertain to courts of the United States. One is to eliminate for the purposes of the Act the Supreme Court, whose appellate and original jurisdiction stems from the Constitution, from the Act's scope and the other to make certain that the courts of the District of Columbia, whose jurisdiction is controlled by Congress, come within it. However, there is no language contained in the section which can be reasonably interpreted or judicially construed as evincing an intention to read into the phrases "courts of the United States" and "any court of the United States" a status of court different from that dealt with by the related Judicial Code or destroy the identical meaning existing therein between courts of the United States and constitutional courts under Article III of the Constitution.

In our opinion, the nature of the spirit and reason which prompted Congress to bring by express provision the courts of the District of Columbia within the purview of "any court of the United States" essentially suggests a legislative attempt to rectify in effect an apparent error appearing in the latest decision of the Supreme Court of the United States on the status of such courts at the time

the Norris-LaGuardia Act was enacted, and but for which error there would have been no necessity to define the term "court of the United States" nor greater need to expressly include the courts of the District of Columbia therein than to expressly exclude the Supreme Court of the United States therefrom, Congress by Act of March 3, 1901, 31 Stat. 1199 (D. C. Code [1940], Tit. 11, § 305) having deemed the court of first instance of the District of Columbia to be a "court of the United States." This error lay in the unmistakable language of the Court in *Ex Parte Bakelite Corporation*, 279 U. S. 438, 73 L. ed. 789, decided three years before the Norris-LaGuardia Act was passed, that the courts of the District of Columbia are legislative rather than constitutional courts. Indeed, a comparable spirit and reason motivated the passage of the Act itself in disapproval of *Duplex Co.* v. *Deering*, 254 U. S. 443, which as the Court indicated in *United States* v. *Hutcheson, supra*, emasculated the Clayton Act, so Congress believed, by unduly restrictive judicial construction. It was not until after the Norris-LaGuardia Act became law that the Court in *O'Donoghue* v. *United States*, 289 U. S. 516, 77 L. ed. 1356, judicially corrected the error by designating the declaration in the *Bakelite* case to be sheer *obiter dictum* and holding that the courts of the District of Columbia are constitutional courts in the historic meaning under Article III of the Constitution, thereby in effect affirming the legislative correction made by Congress.

The purpose of section 10 of the Norris-LaGuardia Act (U. S. C. Tit. 29, § 110) in using the term "court of the United States" is to expedite appeals from such court to the Circuit Court of Appeals, excluding by implication any court, such as circuit courts of the Territory, where review does not lie in that appellate court. This section does not apply literally to the courts of the District of

Columbia because review therefrom lies in the United States Court of Appeals for the District of Columbia rather than in the Circuit Court of Appeals. However, it does so substantially. This is evidenced by the effect of the holdings of the Supreme Court of the United States that the court of first instance in the District of Columbia (now named "The District Court of the United States for the District of Columbia" by Act of June 25, 1936, 49 Stat. 1921, c. 804) is in effect a District Court of the United States within the same federal judicial system and that its appellate court, although of different name, likewise is a Circuit Court of Appeals. (*Federal Trade Comm.* v. *Klesner*, 274 U. S. 145, 71 L. ed. 972; *Swift & Co.* v. *United States*, 276 U. S. 311, 72 L. ed. 587; *Claiborne-Annapolis Ferry* v. *United States*, 285 U. S. 382, 76 L. ed. 808.) There is thus no difference in substance between the two parallel sets of courts. It is therefore reasonable to assume that Congress intended the identity as that recognized by existing judicial holdings and hence intended the section to apply to the District Court of the United States for the District of Columbia with the same force as it does to District Courts of the United States.

The meaning, then, of a "court of the United States," drawn from every part of the Norris-LaGuardia Act as well as from its caption "An Act * * * to define and limit the jurisdiction of courts sitting in equity * * *," is interpreted to be any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress under Article III of the Constitution and which court is one of first instance, sitting in an equity case involving or growing out of a labor dispute, with authority therein to issue restraining orders and injunctions reviewable in either the Circuit Court of Appeals or the United States Court of Appeals for the District of Colum-

bia. This interpretation is reasonable and synchronizes each portion of the Act with the others so as to give effect to every sentence, clause, phrase and word thereof. At the same time it is in harmony with the Judicial Code and portions of the Clayton Act incorporated in it, to which the Norris-LaGuardia Act relates and professes to amend. This, therefore must be taken as the legislative intent of Congress, nothing inconsistent thereto appearing in the Act. Such intent is not obscure but manifest by the language employed. Hence there is no need to seek corroborative aid from the reports of the Senate and House Committees on the Judiciary in charge of the preparation of the then proposed Norris-LaGuardia Act even though they may authoritatively supply such aid.

The position of the petitioners is briefly that Congress, having the power to define and limit the jurisdiction and authority not only of inferior constitutional courts under Article III of the Constitution but also of inferior legislative courts under Article IV, intended to exercise that power to the fullest extent by passing the Norris-LaGuardia Act and consequently included within its scope the circuit courts of the Territory. The difficulty, however, is that Congress neither expressed nor implied such an intent. In the absence thereof it cannot be presumed that Congress in cases involving labor disputes intended to supersede the local law respecting the exercise by a territorial circuit court of its full equity jurisdiction and the taking of appeals from its orders and decrees to the supreme court of the Territory. (See *Inter-Island Steam Nav. Co.* v. *Hawaii*, 305 U. S. 306, 82 L. ed. 189.)

In support of their position, the petitioners place great reliance upon the broadness of the public policy declared by Congress in section 2 of the Act (U. S. C. Tit. 29, § 102) and the literal application to territorial circuit courts of

the clause in section 13 (d) (U. S. C. Tit. 29, § 113 [d]), i. e., "whose jurisdiction has been or may be conferred or defined or limited by Act of Congress." But the declaration of such policy by its language, though broadly expressive of rights of labor under the Act, does not purport to extend beyond the jurisdiction and authority of "courts of the United States," as defined and limited by the Act itself, nor does the clause modify anything but the comparable and definitive phrase "any court of the United States." It is reasonable to assume that Congress used the two phrases, "courts of the United States" and "any court of the United States" coextensively with the scope of the Act with respect to the courts affected thereby and advisedly in the historical meaning of constitutional courts, contradistinguished from legislative courts, which those phrases have concededly acquired by legislative use and judicial interpretation. (See *McAllister* v. *United States*, 141 U. S. 174, 35 L. ed. 693; *O'Donoghue* v. *United States*, 289 U. S. 516, 77 L. ed. 1356; *Mookini* v. *United States*, 303 U. S. 201, 82 L. ed. 748.) Further, Congress is presumed to have been aware of and have intended to adopt such meaning, especially when it employs in the existing and related Judicial Code the same phrases of identical import to denote courts vested with the judicial Power of the United States by Article III of the Constitution. Thus the parts relied upon by the petitioner, consonant with the Act as a whole, conclusively in themselves and in relation to the other parts reflect the intent of Congress to affect only that great class of inferior courts established by Congress under Article III of the Constitution. For the Supreme Court of Hawaii to construe the Act otherwise so as to make it affect any court not belonging to that class would be judicial legislation.

The Norris-LaGuardia Act having no application to

the second circuit court of the Territory and that court not being a "court of the United States" as defined by and within the meaning thereof, the petition for writ of prohibition is dismissed and the temporary writ dissolved.

*G. A. Anderson* (*H. Bouslog* with him on the brief) for petitioners.

*M. E. Winn* (*Vitousek, Pratt & Winn* on the brief) for respondent Maui Agricultural Co., Ltd.

*C. N. Tavares*, Attorney General and *D. C. Lewis*, Deputy Attorney General, for respondent C. A. Wirtz, judge circuit court second circuit.