**ALESNA et al. v. RICE et al.**

Civ. No. 769.

District Court, Territory of Hawaii.

Feb. 25, 1947.

Harriet Bouslog, of Honolulu, Hawaii, and Meyer C. Symonds, of San Francisco, Cal., for plaintiffs.

C. Nils Tavares, Atty. Gen., and Michiro Watanabe, Deputy Atty. Gen., of Honolulu, Hawaii, for defendants.

McLAUGHLIN, District Judge.

The plaintiffs bring this action under the Civil Rights Act, 28 U.S.C.A. § 41(14), alleging upon four different grounds the deprivation under color of Territorial law of rights guaranteed to them by the Constitution and laws of the United States.

Upon application and in accord with 28 U.S.C.A. § 381, Rule 65, Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c, a restraining order was issued ex parte. An order to show cause was returnable upon the tenth day thereafter, and as the argument was not concluded the restraining order was extended under the rule an additional ten days.

The question—and the only question now before the Court—is whether or not, pending a hearing upon the merits, a temporary injunction should issue.

The case arises out of the recent Territorial-wide strike of all sugar plantation workers. Upon the Island of Kauai the Lihue Plantation Company, Limited, applied in a proceeding in equity to the Judge of the Territorial Circuit Court for the Fifth Judicial Circuit for injunctive relief against certain aspects of picketing then being carried on by the unionized strikers. The Territorial Judge issued ex parte a restraining order restricting certain phases of picketing by the defendants in that case. Thereafter the defendants moved to dissolve it as having been issued contrary to the provisions of the Norris-LaGuardia Act, § 1 et seq., 29 U.S.C.A. § 101 et seq. Judge Rice denied the motion but subsequently upon his own motion amended the restraining order which he had previously issued. Insofar as is here pertinent, the restraining order as amended prohibited the defendants from

(a) Engaging in mass picketing on or near company business or residence property for the purpose of preventing, obstructing or interfering with ingress or egress to such property; and

(b) Using more than three pickets at points of ingress to or egress from company property, and directing that at all other points where more than three pickets were used that such pickets should be in motion and, except when passing each other, a distance of ten feet between each picket should be maintained.

The plaintiffs here were indicted upon two counts by the Grand Jury of the Territorial Fifth Circuit Court for criminal contempt of court in that, as alleged in the indictment, they wilfully violated the restraining order

(1) By mass picketing with others on or near company property to prevent, obstruct, and interfere with ingress and egress thereto; and

(2) By picketing with others in groups in excess of three at points of ingress to and egress from company property, and also by failing to keep in motion and by failing to maintain a distance of ten feet between each other.

Thereafter, in a case in the Second Circuit Court arising out of a similar situation upon the Island of Maui, upon a petition for a writ of prohibition, the Territorial Supreme Court was called upon to decide whether or not the Norris-LaGuardia Act applied to the Territorial Circuit Courts. In a decision dated December 4, 1946, the Supreme Court of Hawaii held that that Act did not apply to the Territorial Courts. 37 Hawaii 404. A Petition for Rehearing was denied by that Court on January 23, 1947, 37 Hawaii ——, and an appeal has been taken to the Circuit Court of Appeals for the Ninth Circuit.

The plaintiffs came to this Court January 31, 1947, and upon the basis of the allegations contained in the complaint—which included an allegation that the criminal case against plaintiffs was set for plea and trial in the Fifth Circuit Court on February 4, 1947 (now reset for February 26th)—asked ex parte, for an order restraining Judge Rice and the Territorial Attorney General from proceeding with the criminal case in the Fifth Circuit Court until further order of this Court.

Because of the nature of the case, the importance of the questions of law involved, and the facts and circumstances surrounding it, as has been stated, a restraining or-

der issued, but only against the Territorial Attorney General, his deputies and assistants. The defendant Judge and Attorney General were directed to show cause why a preliminary injunction should not issue as prayed for.

In reply, the defendants state that

(1) This Court has no jurisdiction to enjoin Territorial Judge Rice;

(2) The Judge is not a proper party to a suit such as this;

(3) The complaint shows that this Court has no jurisdiction, for this Court cannot enjoin a criminal action pending in a Territorial Court; and

(4) That the complaint shows no grounds for equitable relief.

Plaintiffs, of course, state that defendants' objections are not well taken, and affirmatively assert rights guaranteed to them by the Constitution and laws of the United States are being denied them by the Territory and one of its Courts in that

(a) The Norris-LaGuardia Act does apply to the Territorial Courts,—hence, Judge Rice's amended restraining order was void —the plaintiffs have been indicted for violating a void order of Court, and are being forced to defend themselves against such an indictment in a Court which has already ruled out the Norris-LaGuardia Act and the hands of which on the point are now tied, in any event, by the ruling of the Territorial Supreme Court;

(b) If the Norris-LaGuardia Act does not apply to the Territorial Courts, the same consequences above outlined follow in any event, for it must then be that this Court, the United States District Court for the Territory of Hawaii, has been given by Congress exclusive power in the Territory to issue injunctions in labor dispute cases in conformity with the Norris-La-Guardia Act and hence Judge Rice's restraining order was void;

(c) The laws of the United States grant plaintiffs, members of a union, substantive rights which no Court can restrain in the absence of fraud or violence; that Judge Rice's restraining order is void, for it prohibited the free exercise of, and the indictment based thereon alleges it to have been a criminal offense to have exercised, rights granted to members of a union by United States laws. In brief, it is said plaintiffs are being charged criminally for doing what Congress gave them as members of a union a right to do.

And finally that

(d) Judge Rice's order and the indictment based upon it deprived plaintiffs of rights guaranteed to them by the Constitution in that the right to picket is an exercise of the rights of free speech and of assembly.

## Opinion

My answers to the questions presented are:

■ I. The Norris-LaGuardia Act does not apply—directly—to the Territorial Judiciary.

Although those courts fall squarely within the phrase "Court of the United States" as defined in the Act, 29 U.S.C.A. § 113(d), it is to me satisfactorily clear from the nature of the Territorial Government created by the Organic Act, 48 U.S.C.A. § 491, and the objective sought to be attained by Congress in passing the Norris-La-Guardia Act that it was never meant to apply to the Territorial Courts.

■ In organizing this Territory, Congress gave to the local government which it created broad domestic powers, and it separated that local government from the operations within the Territory of the Federal Government. Congress gave to the Territory a form of organization more like that of a State than it had previously given to any like area. See People of Puerto Rico v. Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235. Insofar as the Territorial Courts are concerned, Congress itself recognized the distinction between the Territorial Courts and the U. S. District Court for the Territory of Hawaii, 48 U.S.C.A. § 645. As pointed out in Wilder's Steamship Co. v. Hind, 108 F. 113, at pages 115, 116, years ago "The system of courts created by the act for the territory of Hawaii differs radically from the system of courts which Congress had theretofore created for any of the territories. In no other territory has there been a division of jurisdiction between cases

which properly belong to courts of the United States and other cases. Congress found in the republic of Hawaii a system of courts already established, whose jurisdiction was complete, and from the highest tribunal of which there was no appeal. To that system congress, by the act, added a district court, conferring upon it the jurisdiction which pertains to the district and circuit courts of the United States, and providing for removing to that court from the Territorial courts causes which under the removal acts were removable from a state court to a court of the United States." See also Yeung v. Territory of Hawaii, 9 Cir., 132 F.2d 374.

There is no intent revealed in either the act or its history which requires that the distinction between the Territorial courts and the Federal Court for the Territory of Hawaii was to be obliterated. Congress on the contrary spoke of an intent not to disturb domestic jurisdiction.

Further, as designed the Norris-LaGuardia Act does not fit the Territorial court system. 29 U.S.C.A. § 110 provides for appeals from the granting or denial of a preliminary injunction to the Circuit Court of Appeals, which in this instance would be the Ninth Circuit Court of Appeals. Such an appeal from the Territorial Circuit Courts is not possible. From those courts appeals lie to the Territorial Supreme Court.

Basically, although "courts of the United States" in a very wide, general sense, the Territorial courts are not within the Norris-LaGuardia Act because Congress was aiming at, and only at, the District Courts of the United States and the Circuit Courts of Appeal. A reading of the legislative history leaves no doubt upon the point. The evil sought to be remedied was the issuance of blanket injunctions against labor for little if any reason by the Federal Courts in labor dispute cases in contravention of the will of Congress as set forth in the Clayton Act. 29 U.S.C.A. § 52. See United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788. In curing the evil by the passage of the Norris-LaGuardia Act Congress had no other courts in mind. It saw the source of the trouble and set about to remedy it, as it did, by curtailing the powers of the Federal judiciary—and none other.

■ II. The Norris-LaGuardia Act does apply to this Court.

The Act curtails and restricts the equity powers of the Federal Court to the same extent that it affects like powers held by Constitutional Federal Courts. In passing this legislation Congress gave not a moment's thought, to be sure, to Legislative Federal Courts as such. As to courts, the discussions were generally in terms of "inferior" courts, "inferior" Federal courts and "Federal" courts. But, nevertheless, the thing of importance to note was that Congress was dealing with equity power possessed by any Federal Court. This Court, although legislative, not only comes within the terms of 29 U.S.C.A. § 113(d), but additionally is within the target area reached by the Congress through the Norris-LaGuardia Act, for it has equity powers identical to those held by Constitutional Federal Courts. 48 U.S.C.A. § 642.

To arrive at any other conclusion than that the Act applies directly and squarely to this Court would not only be to construe the Act in a "spirit of mutilating narrowness" (See United States v. Hutcheson, supra) while fully aware of what Congress was "driving at", but would further bring about the absurd result that this Legislative U. S. District Court has more power today than a Constitutional U. S. District Court.

■ III. This Court has not been given exclusive jurisdiction to issue, upon compliance with the Norris-LaGuardia Act, injunctions in labor disputes.

The opposing contention is based upon the Sherman Act, 15 U.S.C.A. § 3, giving this Court jurisdiction over violations of that law in Hawaii. Relying upon the Hutcheson case, supra, to the effect that the Sherman Act, the Clayton Act and this Act, the Norris-LaGuardia Act, must be read together as one integrated piece of legislation, it is argued that the amendatory act must be accorded the same geographical scope.

It is a fascinating and in many respects plausible argument, and under the Hutcheson case it is difficult to put a finger upon

just why the second proposition does not follow from the first. But I am not satisfied that the argument is sound.

Of all injunctions sought upon the theory that the complained of labor activity is an unlawful restraint upon Territorial commerce, this Court would have exclusive jurisdiction. But to hold, as plaintiffs urge, in the absence of specific language in the statute that the Territorial Courts are powerless to act by injunction in a case arising out of a labor dispute would be in my opinion judicial legislation.

Professing no intention to interfere with the equitable powers of the state courts—which of course it couldn't affect directly—it seems to me also reasonable to believe, in the absence of contrary language, that Congress had no reason, desire, or intention to deprive, as it could have, the domestic courts of Hawaii of any part or all of their equity power.

IV. However, in this case, and with reference to the facts alleged and the law involved in the plaintiffs' third and fourth causes of action, a preliminary injunction should and therefore will issue.

How can it issue? There is a criminal proceeding pending in a Territorial Court, and 28 U.S.C.A. § 379—which because of 48 U.S.C.A. § 645 applies to this Court—says that no court of the United States shall enjoin proceedings in State or Territorial Courts. The answer is that the statute directing the observance of the principles of comity between courts exercising different powers in the same area is not jurisdictional, and has recognized exceptions. Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L. Ed. 100, 137 A.L.R. 967.

■■ Where exceptional circumstances of peculiar urgency are shown to exist, a Federal court may interfere with a State court or Territorial court for the purpose of inquiring whether or not a person is being held in violation of the Constitution and laws of the United States. Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868; United States ex rel. Kennedy et al. v. Tyler, Sheriff, et al., 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138; United States ex rel. Murphy v. Murphy, 2 Cir., 108 F.2d 861;

United States ex rel. Buchalter v. Lowenthal, 2 Cir., 108 F.2d 863. This power is exercisable by injunction as well as by writ. It is well settled that equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments when the prevention of such prosecutions is essential to safeguard property rights. See Pughe v. Patton, D.C., 21 F.Supp. 182, 183, and cases there collected. As pointed out recently by the Supreme Court of Massachusetts in a somewhat similar case, if equity can protect the right to sell bananas, there is no reason historical or otherwise why it cannot act to protect personal rights and rights guaranteed by the Constitution. See Kenyon v. City of Chicopee, Mass., 70 N.E.2d 241. And so I am satisfied of the existence of the power to grant both the temporary and ultimate remedy asked for.

■ Now, should—or more pointedly—why should a preliminary injunction issue? Because in the absence of any Territorial law, and in the light of the definite Federal laws relating to permissible labor conduct—which laws the Territorial courts, to, must respect—there seems here to be a substantial question as to whether or not that which under Federal law may be allowable conduct can—by restrictions placed thereon by a court, however reasonable they might be—become, as the Supreme Court says, "the road to prison." See United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 467, 85 L.Ed. 788; Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Hague v. CIO, 307 U.S. 496, 507, 59 S.Ct. 954, 83 L.Ed. 1423.

In brief, with no questions of Territorial law involved at all, it looks as if plaintiffs are in jeopardy because they did things which Federal law allowed. Before exposing plaintiffs to the risks of trial for criminal contempt of court, I believe the questions of law imposed under these facts should be further examined.

But I see no good reason why the preliminary injunction which will issue should enjoin the Judge of the Fifth Circuit Court. Effective relief can be attained by restraining the hand of the Attorney General as effective relief ex parte was similarly grant-

ed at the time of the issuance of the restraining order. And, therefore, the preliminary injunction will be like the restraining order issued only to the Attorney General. A preliminary injunction in substantially the same form as the restraining order will suffice, and such will be signed on presentation.