## HALL et al. v. HAWAIIAN PINEAPPLE CO., Limited.

### SAME v. CALIFORNIA PACKING CORPORATION.

### SAME v. MOORE, Circuit Judge (two cases).
### Civ. Nos. 801–804.

District Court, Hawaii.
July 19, 1947.

534

Harriet Bouslog and Myer C. Symonds, both of Honolulu, Hawaii, and Herbert Resner (of Gladstein, Anderson, Resner & Sawyer), of San Francisco, Cal., for petitioners.

Anderson, Wrenn & Jenks, of Honolulu, Hawaii, for respondent Hawaiian Pineapple Co., Ltd.

Vitousek, Pratt & Winn, of Honolulu, T. H., for respondent California Packing Corporation.

Rhoda V. Lewis, Acting Atty. Gen., Territory of Hawaii, and Michiro Watanabe, Deputy Atty. Gen., Territory of Hawaii, for respondent Moore.

McLAUGHLIN, District Judge.

These cases grow out of a situation developed as a result of a strike in the Hawaiian pineapple industry. They are based upon the Civil Rights Act, 8 U.S.C.A. § 43, and consequently 28 U.S.C.A. § 41 (14) gives this Court jurisdiction.

They are unpopular cases not alone because they involve picketing, present serious and somewhat novel questions of federal labor and constitutional law, but also because restraining orders issued in two of the cases indirectly resulted in what seemed to be a conflict between this Court and a Territorial court.

Soon after the strike began on July 11, the Hawaiian Pineapple Company and the California Packing Corporation applied on July 12 to Judge Moore of the Territorial First Circuit Court for injunctive relief in equity with regard to certain aspects of picketing. The Circuit Court issued a very broad restraining order ex parte and an order to show cause, returnable July 16 at 1:30 o'clock p.m.

On July 14 petitioners filed two of the four suits here involved against the two named corporations, and upon an ex parte showing of deprivation of constitutional rights this Court issued a restraining order against the corporations restraining them from taking further action in the Territorial suits and an order to show cause returnable at 9 a.m. July 16.

Apparently in view of a remark passed by this Court in granting the above restraining order that it was of doubtful value in relation to the objective sought, on July 15 petitioners filed two more suits of like nature asking identical relief against Judge Moore directly.

The Court declined to restrain Judge Moore but did issue a show cause order returnable at the same time as the others in the related cases.

At no time has this Court interfered either with the First Circuit Court's power

to punish for criminal contempt, or with the law enforcement agencies of either the Territory or the City and County.

This fact is mentioned for in the increasingly tense situation which existed before the strike was ended July 15 at midnight, publicity given to the legal phase of the situation was faintly reminiscent of another commonly misunderstood legal situation in the days of military government in Hawaii.

 So let it be distinctly understood that this is no battle of injunctions or restraining orders by courts of different jurisdictions. The issues presented are serious and complicated legal issues—issues that cannot be brushed aside in accordance with one's likes and dislikes—as has been attested by the fact that argument here has taken many hours on the part of several attorneys, including the Acting Territorial Attorney General. If the power exists, and it is made to appear that anyone under color of law, including a judge, is depriving persons of their constitutional rights without an adequate remedy, a federal court has a peculiar duty to examine the allegations and to act if need be, irrespective of the unpopularity of the issue or of individual feelings. Constitutional rights of persons as contrasted with property rights occupy a preferred position, and as the Supreme Court has said "the right to exercise the liberties safeguarded by the First Amendment 'lies at the foundation of free government by free men.'" Marsh v. State of Alabama, 326 U.S. 501, 509, 66 S.Ct. 276, 280, 90 L.Ed. 265.

This Court has no intention or desire to usurp the powers of the Supreme Court of either the Territory or of the United States and to sit in judgment upon the acts of a Territorial circuit court. But, despite this fact, as has been pointed out, where it is made to appear that it may be this Court's special duty under the Civil Rights Act to examine alleged infringements of constitutional rights, that duty will not be neglected.

Perhaps a situation such as this could develop only in a place such as Hawaii. At least it has to my knowledge never come about in like circumstances in any one of the states. The closest similar case arising in a state that presently comes to mind is reflected in Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, and possibly Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.

In any event, because Hawaii is not a state and thus has no independent sovereignty which must be respected as in the case of a state and because this is not a "court of the United States"—not a constitutional federal court—there is room for substantial doubt as to whether or not 28 U.S.C.A. § 379 applies despite 48 U.S.C.A. § 645, which says that in general the relations governing state and federal courts shall govern the relations between this and the territorial courts. So many times within the Judicial Code Hawaii and this Court are neither fish nor fowl that it is hard to be sure of the answer until the Supreme Court has spoken. Witness the confusion on a similar point now pending before three judges in the so-called Chinese Language School case, involving 28 U.S.C.A. § 380.

The comity statute, defining a long standing policy declared by Congress that "to prevent needless friction between state and federal courts" no writ of injunction shall be granted by any court of the United States to stay proceedings in any state court, for all practical purposes, should apply in this jurisdiction. The spirit of the law is and will be observed regardless of the legal technicalities involved.

 But assuming that it does, as held in Alesna v. Rice, D.C., 69 F.Supp. 897, it is well settled that this "hands off" statute is not jurisdictional and has exceptions, few though they be. Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967. Where there is basic equity jurisdiction, plus exceptional circumstances showing a danger of irreparable injury both great and immediate, a federal court may enjoin, despite the comity statute, even a criminal proceeding in a state court. See Douglas v. City of Jeannette, supra, and cases cited in Alesna v. Rice, supra.

Here I believe we have a case sounding within the exceptions to the statute. An

equitable basis exists, and it is apparent that the danger of irreparable injury is great and immediate in that a right to picket peacefully does not exist once a strike is settled. It is of value during labor disputes and if the content of the right be drained away, curtailed unlawfully, and left but an empty shell irreparable damage has been most certainly suffered.

■ So it is that upon these petitions the Court has taken temporary jurisdiction to ascertain whether or not it should render the relief prayed for.

To a considerable extent the cases have become moot. The strike, as noted, is over and all picketing has ceased. However, as there may hereafter be criminal contempt proceedings for violations of Judge Moore's restraining order, it appears advisable to examine the issues presented.

In any event, the argument in response to the Court's inquiry as to whether or not even this aspect of the case is not also moot is that Judge Moore may cite plaintiffs for contempt of his restraining order, and as it is claimed to be void as violative of plaintiffs' federal and constitutional rights, plaintiffs stand in jeopardy and should be relieved from the threat of unlawful criminal proceedings.

Four causes of action are alleged. It is alleged that the Circuit Court's action is unlawful and deprives plaintiffs of their federal and constitutional rights because:

1. The Circuit Court ignored the Norris-LaGuardia Act which is claimed to be applicable to the Territorial courts as courts of the United States defined by that Act. 29 U.S.C.A. § 101 et seq.

2. In any event it is claimed the Norris-LaGuardia Act gives this Court exclusive jurisdiction to issue in compliance with it injunctions in labor disputes in Hawaii, therefore the Circuit Court lacked jurisdiction.

3. The right to picket peaceably is an exercise of the right of free speech, and the Circuit Court's restraining order deprives plaintiffs of this right by unduly restraining it so as to make it practically nonexistent.

4. So also of plaintiffs' right to peaceable assembly.

■ Points 1 and 2 are held to be unsound and without merit in accordance with Alesna v. Rice, D.C., 69 F.Supp. 897, which on the merits unfortunately is not yet at issue and upon the preliminaries was not as fully argued on points 3 and 4 as has been this case.

■ It is now of course well settled by Supreme Court decisions, starting with Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, that the rights to picket peaceably and to peaceably assemble are rights guaranteed by the Constitution. And the Hutcheson case (United States v. Hutcheson), 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788, seems to stand for the proposition that the rights of labor enumerated in Section 20 of the Clayton Act, 29 U.S.C.A. § 52, and Section 4 of the Norris-LaGuardia Act, 29 U.S.C.A. § 104, have been federalized as substantive rights.

■ These federal rights are binding upon the Territory to the same extent that they are binding upon the states. Both must shape their statutes and specific injunctions in equity with due respect for them. A superficial regard for them will not suffice.

■ Additionally we know from Supreme Court decisions that the right to picket peaceably is not an absolute right. It is a right to do what it says—picket peaceably. Under circumstances of fraud or violence presenting a clear and present danger to public peace and order it may not only be curtailed but even forfeited. See Milk Wagon Drivers Union, etc., v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200.

The balancing of these federal rights of labor, both constitutional and statutory, the statutes and Supreme Court decisions have left to the states. They may resolve, without destroying or impairing, the conflicts which arise in economic warfare between these rights and the rights of others, including the public, either by state statute narrowly drawn or by injunction similarly designed to fit a specific situation.

See Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, Inc., 312 U.S. 287, at pages 295 and 299, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200.

As to mass picketing, the Supreme Court has indicated that it is not peaceful picketing. In Allen-Bradley Local, etc., v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154, it approved a statutory injunction against mass picketing accompanied by threats and obstructive tactics, against interference with the rights of others to work, against obstructing factory entrances, and against the picketing of private homes as a legitimate exercise of the state's police power and upon the facts not violative of defendants' federal rights.

And in the Thornhill case, 310 U.S. at page 105, 60 S.Ct. 736, 84 L.Ed. 1093, the Carlson case (Carlson v. People of State of California), 310 U.S. 106, at page 113, 60 S.Ct. 746, 84 L.Ed. 1104, the Meadowmoor case, 312 U.S. at page 297, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200, and the Swing case (American Federation of Labor v. Swing), 312 U.S. 321 at page 325, 61 S.Ct. 568, 85 L.Ed. 855, the Supreme Court made it clear that it was not dealing with mass picketing and that it recognized the "power and duty of the State to take adequate steps to preserve the peace and protect the privacy, the lives, and the property of its residents * * *" by "a statute narrowly drawn to cover the precise situation giving rise to the danger." 310 U.S. 106 at page 113, 60 S.Ct. 746, at page 749, 84 L.Ed. 1104 and 310 U.S. 88 at page 105, 60 S.Ct. 736, at page 746, 84 L.Ed. 1093.

Having given the Territory nearly a full measure of domestic power, 48 U.S.C.A. § 491 et seq., there is no reason to believe that the Supreme Court would deny to it the exercise of its police power in the same manner and under the same conditions it sanctions upon the part of states.

So it is that I believe and hold that the Territory—electing in the absence of a statute to exercise a part of its police power through its equity courts by the issuance for good cause shown of injunctions to fit the circumstances of specific situations—has also the power and the duty to take steps to preserve the peace, protect privacy, lives and property. It, like the states, may therefore when justified by the facts, not inconsistently with federal and constitutional rights:

1. Regulate mass picketing when it is obviously not a joint exercise of the right to peaceably picket for the purposes of communication, that is, free speech;

2. Prohibit threatening, coercive, intimidating, offensive actions;

3. Order that exits and entrances be kept unobstructed;

4. Prohibit the obstruction of public streets and sidewalks;

5. Prohibit the picketing of private homes; and may also make such other appropriate orders as warranted by the facts not inconsistent with unforfeited federal and constitutional rights obtaining in a labor dispute.

See generally: Weyerhaeuser Timber Co. v. Everett District Council of Lumber & Sawmill Workers, 1941, Wash., 119 P.2d 643; General Electric Co. v. Peterson et al., 1946, Sup., 61 N.Y.S.2d 813; Isolantite v. United Electrical Radio and Machine Workers, 1942, 132 N.J.Eq. 613, 29 A.2d 183; Western Electric Co. v. Western Electric Employees Association, 137 N.J.Eq. 489, 45 A.2d 695; Westinghouse Electric Corporation v. United Electrical Radio & Machine Workers, 1946, 353 Pa. 446, 448, 46 A.2d 16, 163 A.L.R. 656; Lisse v. Local Union No. 31, Cooks, Waiters, etc., 1935, 2 Cal.2d 312, 41 P.2d 314; United States Electrical Motors, Inc. v. United Elec. Radio & Machine Workers Local 1421, Cal. Super., 166 P.2d 921; Lily Dache Inc. v. Rose, Sup., 28 N.Y.S.2d 303; New England Novelty Co., Inc., v. Sandberg, 1944, 315 Mass. 739, 54 N.E.2d 915.

Upon the verified pleading and showing made by several affidavits, clearly then Judge Moore was justified in issuing a temporary restraining order.

Maybe the one he issued is—and I think it is—too broad in relation to the size and geographical width of the strike. Perhaps, too, I might agree that the order does not keep in mind Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265, to

the effect that federal rights are exercisable as fully in company towns and villages as elsewhere. Perhaps, too, further investigation upon the return to Judge Moore's order to show cause would show that the many are being penalized for the isolated action of the few and that very definitely there is room for keeping in mind the Supreme Court's admonition that the court itself should so draft the decree that it does not take an attorney to interpret it. See Meadowmoor case, supra, 312 U.S. at page 296, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200.

But when all this is said, what is now before me for decision?

 I have been petitioned to enjoin Judge Moore and the other defendants here by temporary and permanent injunctions from depriving by further action in the First Circuit Court plaintiffs of their constitutional rights. And as we have seen that has become moot as the strike is over, and from what has been said it is doubtful if this Court would interfere as requested, for in keeping with its powers, there is no good reason to believe that after a full hearing the Circuit Court would not fully and adequately protect plaintiffs' rights in balance with the rights of others and the public. The Territorial courts are as well able to handle federal questions arising in litigation as are state courts.

And as to the restraining order, relief against it has, so to speak, been granted, and it is admitted no criminal citations for contempt have been issued. If such occurs, and there is an intimation that it may, I can presently see no basis for believing that such defendants' federal rights will not be as fully protected in the Circuit Court as here. This phase of the case, in which, with reliance upon the case of Ex parte Bell, 19 Cal.2d 488, 122 P.2d 22—containing an excellent analysis of the state and federal laws of picketing which can indeed be noted with profit—it is argued that Judge Moore's restraining order is either so obviously void or ambiguous as to place plaintiffs in jeopardy unlawfully of criminal contempt proceedings and therefore this Court should strike it down and prohibit the possibility of contempt citations, seems also to present a moot issue. When, as and if a plaintiff is cited for contempt under it a real controversy may then arise. In that event, in the absence of special circumstances describing irreparable injury both great and immediate, the comity statute, 28 U.S.C.A. § 379, would dictate a "hands off" policy by this Court, for the Territorial court will be well able to provide adequate protection of a defendant's federal rights. At least Judge Moore is entitled to an opportunity to rule upon the important questions which have here been argued so well. ·

Upon the state of the record at this time, which I take to present no live issue, for reasons above recited, motions to dismiss are granted, the four petitions are denied, the restraining order dissolved and the suits dismissed.