ALESNA et al. v. RICE et al.

Civ. A. No. 769.

District Court of Hawaii.

Dec. 4, 1947.

Harriet Bouslog, and Myer C. Symonds, both of Honolulu, T. H., for plaintiffs.

Rhoda Lewis, Acting Atty. Gen., and Michiro Watanabe, Deputy Atty. Gen., Territory of Hawaii, for defendants.

Livingston Jenks, of Honolulu, T. H., amicus curiae for Hawaii Employers Council.

McLAUGHLIN, District Judge.

For a statement of the facts of this case which arises under the Civil Rights Act, 28 U.S.C.A. § 41(14), grows out of the 1946 strike in the sugar industry of Hawaii, and involves a criminal contempt indictment pending in a Territorial Circuit Court, see its initial phase reported in D.C., 69 F.Supp. 897. This reference discloses that a preliminary injunction issued restraining the defendant Attorney General of the Territory from proceeding further with the prosecution of the plaintiffs for contempt of the Territorial Court.

As mentioned in the intervening case of Hall et al. v. Hawaiian Pineapple Company, Ltd., D.C. 72 F.Supp. 533, at page 536, the issues left in balance should have been determined earlier. However, with the criminal contempt proceeding in the Fifth Circuit Court held up by the preliminary injunction, the plaintiffs were not overly insistent upon proceeding to trial and therefore consented to the several extensions of time requested by the Territorial Attorney General's office. When the case began, the then Attorney General was not prepared to reach the constitutional issues, for he was short of assistants and time as he was then serving the Territorial Legislature which was in session at that time. Thereafter, Mr. Tavares resigned as Attorney General and Miss Lewis took over control of the office. While she too directed the office with an inadequate number of assistants, the office in June became involved in the tense pineapple strike described in Hall et al. v. Hawaiian Pineapple Company, supra. Accordingly, the court too being otherwise engaged, numerous stipulations extending time were approved. On July 21, 1947 the defendants filed their Answers. It may be here noted that incidentally as of this date, the Territory has a new Attorney General, though no formal request for substitution has been presented.

On July 22, 1947 the defendants filed this Motion under Federal Rules of Civil Procedure, rule 12(d), 28 U.S.C.A. following section 723c, and it was set for hearing August 26, 1947. Prior to that date, Mr. Jenks applied on behalf of the Hawaii Employers Council for permission to appear in the case as an amicus curiae. The application was resisted by the plaintiffs and favored by the defendants. The request was granted over objection August 11, 1947.

The oral arguments upon this Motion were extensive and when, due to interruptions, they were finally concluded on September 8, 1947, permission was granted to file briefs. On September 12, 1947 the plaintiffs filed a ninety-three page brief, the amicus curiae one of fifty-nine pages and the defendants a two-page memorandum. Until now other court business has prevented the complete digestion of these briefs.

The Motion presents for consideration six of the defenses set up in the Answer. Summarized these are as follows:

1. That the complaint fails to state a cause of action in that the plaintiffs have an adequate remedy in the criminal contempt prosecution in the Territorial Court

as there all defenses could be asserted and the constitutional issues raised subject to a right of appeal to the Territorial Supreme Court and, if need be, from there to the U. S. Supreme Court.

2. That the Comity Statute—28 U.S.C. A. § 379—denies this court jurisdiction of the complaint.

3. That this court has no jurisdiction to enjoin a Territorial Judge.

4. That such a judge is not a proper party defendant.

5. That the complaint fails to state a cause of action for equitable or any other relief, and

6. That even if the Territorial Court's Amended Restraining Order was void, it will support an indictment for contempt.

At the outset, the court posed for the parties' consideration the correctness of its prior holdings that the Civil Rights Act's remedies were available in Hawaii despite the fact that in conferring jurisdiction upon District Courts Congress omitted the word "Territory". Both agreed with the court that as the Act applies specifically to a Territory and confers upon one, whose civil rights secured by the Constitution and laws of the United States have been denied by another under color of the law of any Territory, a right to sue at law or in equity for redress, 8 U.S.C.A. § 43, jurisdiction exists in a legislative Federal court in a Territory and may be invoked by one in a proper case despite the fact that the Congress left out the word "Territory" in granting jurisdiction of such suits to United States District Courts.

■ In the light of the history, the objective and the wording of the whole Act, the word "state" appearing in 28 U.S.C.A. § 41(14) should not be narrowly interpreted. Indeed there is more reason under the Civil Rights Act to interpret liberally the word "state" to include "Territory" than to do likewise with reference to 28 U.S.C.A. § 380 as has recently been done by a three-judge court sitting here in the case of Mo Hock Ke Lok Po et al. v. Stainback, Governor, et al., D.C., 74 F.Supp. 852. But see dissent by Denman, Circuit Judge. In that case it has been specifically held that Congress by not including the word

"Territory" in 28 U.S.C.A. § 41(14) intended to leave such issues to litigation in Territorial courts unless the Federal jurisdictional amount was alleged. Perhaps that ruling is binding here. But, regardless, to hold that for the purposes of this Act, the word "state" does not include Territory would be to prevent the will of Congress having its effect in this part of the United States. Yet Congress intended to protect the constitutional and Federal civil rights of all people everywhere in the nation. See Screws v. United States, 1945, 325 U.S. 91, 98, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330. Since 1900 Hawaii has been an incorporated part of the United States, and the Federal rights of its people are not a single iota less valuable than are those of the inhabitants of a state. See 48 U.S.C.A. § 491 et seq. Having created the right, having given this legislative court the jurisdiction of a "court of the United States", 48 U.S.C.A. § 641 et seq., and having made applicable to the two incorporated Territories the criminal provisions of the Act, 18 U.S.C.A. §§ 51, 52, there is no insurmountable obstacle to making effective by judicial action the granted civil remedy in a Territory for such an important right and thus curing what seems to be an oversight or an imperfection in the statute. Keifer & Keifer v. Reconstruction Finance Corporation, 1939, 306 U.S. 381, 389, 59 S.Ct. 516, 83 L.Ed. 784; Texas & N. O. Railway Co. v. Brotherhood of Railway & S. S. Clerks, 1930, 281 U.S. 548, 568, 50 S.Ct. 427, 74 L.Ed. 1034.

■■ Before reaching the defendants' Motion, counsel for plaintiffs suggested that the court had no jurisdiction to entertain it as the defendants had not appealed from the Order granting the preliminary injunction. 28 U.S.C.A. § 227. Having resisted issuance of the preliminary injunction, plaintiffs argue that defendants cannot be heard again upon the same or similar questions of law, and that the only thing remaining to be done is to proceed to trial. The Court ruled against plaintiffs because it believed, amongst other reasons, that the constitutional issues had not been examined adequately heretofore on account of the Attorney General's reluctance in February to reach them in his argument upon the prayer

for a preliminary injunction. The Statute permitting appeals from interlocutory decrees granting preliminary injunctions does not require a party to appeal at that time. He may, at his option, await the final decree and raise all questions by appealing from it. Victor Talking Machine Company v. George, 3 Cir., 1939, 105 F.2d 697. That being so, there is no rule of law which prohibits a party defendant from taking advantage of F.R.C.P. 12(d) in the absence of an Order of the Court deferring consideration of the defenses in point of law until trial. No such order was made here for the essential facts necessary to a consideration of the questions of law are amply set forth in the voluminous pleadings.

■ Attached to the defendants' Answer, incorporated as a part thereof, are two lengthy exhibits. These exhibits constitute the complete record of all that transpired in the Fifth Circuit Court of the Territory from the date the Lihue Plantation Company applied for equitable relief until the court, upon its own Motion, amended its Restraining Order. Soon after the defendants' Answer was filed, plaintiffs moved to strike paragraphs V and XXIV of the Answer of which these exhibits were made a part on the grounds of redundancy, impertinency, and immateriality. During the course of argument upon this Rule 12(d) Motion, a question arose as to whether or not this court could consider these exhibits to see the basis for the Territorial Court's issuance of its Amended Restraining Order issued by Judge Rice. Plaintiffs argue that it is improper to look behind the Order and besides it is void on its face.

If need be, the court may consider the exhibits attached to and made part of the pleadings of both parties. Together they reveal every step taken in the Territorial Court and are either certified copies (defendants) or copies thereof (plaintiffs). On the other hand, if those attached to the Answer be deemed improper pleading, the defendants' Motion that the court consider them in connection with the Rule 12(d) Motion transforms that into a "speaking Motion" countenanced by the Federal Rules of Civil Procedure. See Rule 12(b) and notes thereunder. See also Samara v. United States, 2 Cir., 1942, 129 F.2d 594, at page 597; Gallup v. Caldwell, 3 Cir., 1941, 120 F.2d 90, at 92; and Rule 12(b) with approved amendment. The Certificate of the Clerk of the Territorial Court provides here even a better guarantee of factual certainty than an affidavit. In any event, with a certified record of all steps taken in the Territorial Court attached to the pleading, to consider them under Rule 12(b) as transposing the pending Motion into one for Summary Judgment under Rule 56 would be an act of judicial economy. What did happen in the Territorial Court is beyond all dispute but the technical point that allegations in an Answer are deemed denied. But this point is irrelevant to a speaking Motion. There is before this court a reliable record of everything the Territorial Court did and said, including argument of counsel, affidavits and the evidence of witnesses who testified. This court may consider that record if need be in disposing of the Motion.

Plaintiffs' pending Motion to strike those parts of defendants' Answer may also be taken as hereby denied.

With preliminary technicalities disposed of, we come to a consideration of the major contentions of law.

■ As indicated to counsel during oral argument, the court adheres to its former rulings that the Norris LaGuardia Act, 29 U.S.C.A. § 101 et seq., does not apply to the Courts of the Territory. Nor does it give this Federal Court exclusive jurisdiction to issue in the Territory injunctions in labor disputes in consonance with the terms of the Norris LaGuardia Act. See Alesna et al. v. Rice et al., and Hall et al. v. Hawaiian Pineapple Company, (both supra).

■ In the Pineapple case, it was stated that under the decision in United States v. Hutcheson, 1941, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788, the rights of labor set forth in Sec. 20 of the Clayton Act, 29 U.S.C.A. § 52, and Sec. 4 of the Norris LaGuardia Act, 29 U.S.C.A. §·104, have been federalized as substantive rights, and that those substantive rights are binding upon the Territory. When re-examined, at the

suggestion of both counsel, the statement is found to be inaccurate as it is too broad and general. To the extent that the rights enumerated in the Clayton and Norris La Guardia Acts coincide with rights guaranteed by the First Amendment to the Constitution, they are, of course, binding upon the Territory. Beyond that they are not binding upon the Territory any more than they are upon a state—which is not at all—for both Acts are limitations upon, and only upon, the Federal Government and its courts. Both Acts were passed to correct judicial interpretations making applicable to labor organizations and activities the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq. By what it thought was clear legislation, Congress has twice notified the courts that labor organizations and activities are exempt from the Sherman Act, Wilson & Co. v. Birl, 3 Cir., 1939, 105 F.2d 948, at page 952. In the Clayton Act, Sec. 20, Congress disclosed that none of the specified Acts shall be "held to be violations of any law of the United States." The history of this phase reveals that originally, as it came to the Senate from the House, the wording was "nor shall any of the Acts specified in this paragraph be considered or held to be violations of the Anti-Trust laws." Upon the Senate floor, the present wording of Sec. 20 was adopted and from the discussions it is apparent that the intent was to modify the Sherman Act and any other Federal statute which might have a bearing thereon. See Congressional Record, 63rd Congress, 2nd Session, Vol. 51, Part 14, pages 14365–14367. In any event, the limitations were upon the Federal Government, and not an invasion of the rights of the states. And as also before noted, there is nothing in either the Clayton Act or the Norris La Guardia Act which under the doctrine of the Hutcheson case must be construed together with the Sherman Act as a single piece of integrated legislation—which evidences an intention by Congress to decrease, as it could have, the measure of domestic power which it had in 1900 given the Territory of Hawaii. A limitation upon the broad domestic powers previously given the Territory is not presumed. People of Puerto Rico v. Shell Co. (P. R.), Limited, et al., 1937, 302 U.S. 253, at page 260–263, 58 S.Ct. 167, 82 L.Ed. 235; Inter-Island Steam Navigation Co. v. Territory of Hawaii, 1938, 305 U.S. 306, at page 312, 59 S.Ct. 202, 83 L.Ed. 189; Kawananakoa v. Polyblank, 1907, 205 U.S. 349, at page 353, 27 S.Ct. 526, 51 L.Ed. 834, and Yerian v. Territory of Hawaii, 9 Cir., 1942, 130 F.2d 786.

■ That the Clayton and Norris La-Guardia Acts are limitations upon Federal law only is to be noted in the decisions of the Supreme Court in Allen-Bradley Co. v. Board, 1942, 315 U.S. 740, at page 748, 62 S.Ct. 820, 86 L.Ed. 1154 and Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044.

With all prior rulings in this case adhered to—including the propriety of the circuit court judge being a party defendant, Picking et al. v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, at page 250—thus once again disposing adversely to the defendants of their first four contentions, with the generalization in the Pineapple case clarified, we reach the two points which in issuing the preliminary injunction, the court stated would need further examination. Alesna v. Rice, D.C., 69 F. Supp. 897, at page 901.

■ The questions specifically are: Did Judge Rice's Amended Restraining Order violate plaintiffs' rights, guaranteed by the First Amendment (1) to freedom of speech and (2) to assemble peaceably?

Before touching these delicate and important questions, it may be well to restate that where the constitutional rights of individuals are at stake, a Federal Court has a peculiar duty to step in, in a proper case, and if need be protect the individual against a threatened unjustifiable exercise of the power of a state or Territory. The adequacy of an opportunity to become a defendant in a criminal case and to then raise the same question of law before a court also bound by the Constitution is questionable. As Borchard points out, it is not at all a remedy. It is a hazard. See "Challenging Penal Statutes," Edwin Borchard, 52 Yale L.J. 445 at 461. True such has often been assigned as a reason for declining to act, but it is not an impressive one, at least in a First Amendment case.

See Douglas v. Jeannette, 1943, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L.Ed. 1324. Where vital human liberties protected by the First Amendment, as distinguished from property rights, are at stake and are on the verge of possibly being crushed by the power of the State or Territory, a Federal court in a case alleging unusual circumstances is justified in acting despite the availability of a remedy later in the State or Territorial courts. The motivating philosophy in cases such as this has been well expressed in Stapleton v. Mitchell, D.C., 60 F.Supp. 51, where at page 55 the court said: "In sum, it seems fairly plain that although the state courts are the preferable forum for the adjudication of the question whether a state statute offends against the Federal Constitution on the theory that state courts equally with the Federal courts are charged with the duty of safeguarding constitutional rights, and since they are the sole judge of the meaning and import of a state statute they should be the first judge of whether state law transcends rights protected by the Federal Constitution. But, where as here, fundamental human liberties are drawn in issue, the Federal courts are a proper forum for the determination of the question whether a state statute trespasses upon an area which the Federal Constitution has set apart as hallowed grounds for expression of democratic ideas. We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum."

The plaintiffs have been indicted for criminal contempt. The Territorial law defines criminal contempt as a felony but also gives the court power to punish contempt summarily, R.L. of Hawaii, 1945, Sec. 11140. In the many years that this law has been in effect, this is said to be the first time that a Territorial judge, instead of using his summary powers, referred the matter to the grand jury. The indictment charges plaintiffs with being in contempt in that—

1. They picketed in mass at a designated time and place for the purpose of obstructing and interfering with ingress to or egress from the Lihue Plantation Company's property by its employees, and others lawfully seeking to enter or leave the company's property; and that

2. They picketed additionally at said time and place in groups of more than three at points of ingress and egress to the Company's property, and the pickets were not in motion nor at least ten feet apart,

all, it is charged, contrary to the terms of the Fifth Circuit Court's Amended Restraining Order.

The portions of this Amended Restraining Order which plaintiffs strenuously assert violated their constitutional rights to freedom of speech and to assemble peaceably are to be found in Sec. 7 of the Restraining Order and its concluding "in furtherance" clause.

The defendants' position is—

1. That the plaintiffs have not stated a claim for relief. The decision of the court in Hall v. Hawaiian Pineapple Company, supra, it is said disposes of the questions of law here in that what the Territorial Court did was in the exercise of its powers and the plaintiffs should present their defenses in the Territorial forum.

2. That upon the authority of United States v. United Mine Workers of America, 1947, 330 U.S. 258, 67 S.Ct. 677, even if Judge Rice's Order was void, it still will support an indictment for contempt for such an Order must nevertheless be obeyed until set aside by orderly judicial processes.

3. That the First Amendment does not guarantee the right of mass picketing in order to prevent ingress and egress to property.

4. That Judge Rice's Order is not unreasonable, but it is designed to fit temporarily a particular situation, and in no way interferes with plaintiffs' right to assemble peaceably elsewhere than at points of ingress and egress to Company property.

The plaintiffs' numerous contentions are—

(a) Exceptional circumstances are alleged in that

(1) It is alleged that the defendants engaged in a course of conduct to oppress and intimidate plaintiffs and other working men in the Territory so that they would fear to exercise their rights.

(2) The plaintiffs have been singled out and selected for prosecution under a statute never before used, all pursuant to a plan to intimidate and coerce plaintiffs and others in the exercise of their rights. That plaintiffs were singled out for prosecution because they were Union officers.

(3) The pendency of this criminal contempt case is an employer weapon to instill fear, spread confusion and weaken the Union's and plaintiffs' rights.

(4) Appeals would be costly and of no avail at least until the Ninth Circuit Court of Appeals was reached as the Supreme Court of the Territory in I.L.W.U. v. Wirtz, 1946, 37 Haw. 404, has ruled adversely to plaintiffs' contentions concerning the Clayton and Norris La Guardia Acts.

(5) Here Judge Rice is the legislator, the wronged person, the prosecutor, and the executor.

(6) It is even claimed that it is contempt to violate a void Order.

(b) The decision in Hall v. Hawaiian Pineapple Company, supra, does not control this case, for the reasons that

(1) This case is not moot. Special circumstances are alleged and plaintiffs are in peril of being unlawfully prosecuted for a felony.

(2) The Amended Restraining Order violates the First Amendment.

(3) The Fifth Circuit Court has already ruled adversely to plaintiffs' position on all substantive issues of Federal and constitutional law.

(4) If convicted, plaintiffs who are citizens will lose their civil rights and the noncitizens be barred from naturalization.

(c) The Amended Restraining Order violates substantive Federal rights under the Clayton and Norris La Guardia Acts.

(d) And finally—the only open issue here—that the Rice Order violates plaintiffs' constitutional rights as guaranteed by the First Amendment in that

(1) It constitutes unjustifiable previous restraint upon their rights of free speech and of assembly.

(2) It narrowly and unreasonably circumscribes these rights at the very time when they are of most value and does so without due regard for the size and scope of the industrial conflict involving 100,000 I.L.W.U. members, 12,000 acres of sugar cane land and twenty company towns and villages.

(3) The Order is vague, ambiguous, and confusing and places the risk of contempt unjustly upon the pickets to determine accurately just what it means, what are the points of ingress and egress, whether in any manner any act of theirs "otherwise" had the effect of accomplishing the prohibited acts, and that the "in furtherance" clause in the Order gives its specific prohibition a tentative quality. In short, it is claimed that it is not clear and explicit and unlawfully places the risk of non-obeyance upon men not too well versed in English, let alone the construction of legal language.

In support of their position that the Order violates their constitutional rights, the plaintiffs rely heavily upon Whitney v. People of State of California, 1927, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095; Herndon v. Lowry, 1937, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066; Thornhill v. State of Alabama, 1940, 310 U.S. 88, 60 S.Ct. 136, 84 L.Ed. 1093; Bridges v. State of California, 1941, 314 U.S. 252, 263, 62 S.Ct. 190, 86 L.Ed. 192, 159 A.L.R. 1346; West Virginia State Board of Education v. Barnette, 1943, 319 U.S. 624, 638, 63 S.Ct. 1178, 87 L.Ed. 1628, 147 A.L.R. 674; Thomas v. Collins, 1945, 323 U.S. 516, 529, 65 S.Ct. 315, 89 L.Ed. 430; Marsh v. State of Alabama, 1946, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265. All cases attesting to the special place occupied by the liberties protected by the First Amendment concerning which in Stapleton v. Mitchell, supra, Judge Huxman at page 63 of 60 F.Supp., dissenting in part, well summarizes the current law as gathered from the Thomas

case as follows—referring first to the usual rule that a statute is presumed to be constitutional—"But it has no application when sacred constitutional guaranteed rights are involved. Then an entirely different principle must guide us. That is the conclusion I draw from the decision of the Supreme Court in the Thomas case. The court points out that these constitutional guarantees have a sanctity and solemnity which is not accorded to general rights arising by operation of statutory law. When a regulation impinges one of these rights, it must not only be justified by a clear public interest and be passed to meet a clear and present danger to such right, but it must also be reasonable and must have a reasonable relation to the object sought to be accomplished. In such case, there is no presumption of constitutionality. There is rather a suspicion in the minds of the courts, the guardian of our constitutional liberties, and the burden is upon him who would uphold the interference with such rights to carry the burden of justifying the interference within the test laid down by the Supreme Court in the Thomas case. As stated by the Supreme Court, when the right to restrict the exercise of free speech is the subject of inquiry, it is our 'tradition to allow the widest room for discussion, the narrowest range for its restriction.' (323 U.S. 516, 65 S.Ct. 315, 323 [89 L.Ed. 430])."

The plaintiffs argue there was not only no clear and present danger to the public but further the restraint imposed is unreasonable. See Thornhill v. State of Alabama, supra, Carpenters & Joiners Union v. Ritter's Cafe, 1942, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 and Thomas v. Collins, supra.

In the preliminary stage of this case, it was said that it appeared, subject to a later and fuller examination of the questions of law based upon the Constitution that in view of the exceptional and unusual circumstances alleged that the plaintiffs had stated a claim for equitable relief. Alesna v. Rice, 69 F.Supp. at page 901.

Is there, now that these questions of law have been examined in an atmosphere less tense than that existing in February, and in view of Hall v. Hawaiian Pineapple Company, supra, any reason to alter the initial ruling?

I am inclined to believe that there is. It does not now appear to me that the plaintiffs' constitutional rights have been invaded by Judge Rice's Restraining Order.

It has already been decided, though to be sure plaintiffs do not agree, that the Territory has the same domestic powers as a state and may "take adequate steps to preserve the peace and protect the privacy, the lives and the property of its residents * * *". Carlson v. California, 1940, 310 U.S. 106, at page 113, 60 S.Ct. 746, 749, 84 L.Ed. 1104. And this it may do by a statute narrowly drawn or by an injunction tailored to fit a specific situation.

Generally speaking, under normal circumstances, no state or Territory can prohibit one's full exercise of his Federal and constitutional rights. Because of Article 6 of the Constitution, the Territory could not, for example make it a crime for labor to exercise in Hawaii its rights under the Constitution or any Federal law any more than a state could. That is what was meant when heretofore the court remarked that the Clayton Act and the Norris La Guardia Act did not apply to the Territory "directly" but that Territorial statutes and injunctions must respect labor's Federal and constitutional rights. But like a state, the Territory may take steps to so regulate, without destroying, these rights of labor that the equally valuable rights of others will be safeguarded and peace and order maintained.

A general statutory restraint upon the liberties guaranteed by the First Amendment is not presumed constitutional but, as noted, is regarded by the courts with suspicion. Stapleton v. Mitchell, supra.

But the same rule does not apply to specific injunctions. Restraints thereon by Orders of Courts are presumably valid unless obviously void on their face, for they are deemed to have been carefully drafted by the court to fit a particular situation.

Here, contrary to plaintiffs' contentions, this Order is not void on its face and may,

874

without resort to the evidence on which it is based, be deemed ·valid. Although the attack upon the Order is concentrated upon its paragraph (7) and its "in furtherance" clause, it is apparent from a reading of the whole Order that what is prohibited is not the lawful but the unlawful. Omitting the preliminaries, the Order reads—

"Wherefore, you, ———.are hereby restrained and enjoined until the further order of this Court from in any way

"(1) Obstructing or attempting to obstruct, by massing of pickets or otherwise, the ingress to or egress from the Petitioner's mill, store or other plantation buildings or premises located in the County of Kauai, Territory of Hawaii, of the Petitioner, its employees, or any others who may enter or desire to enter said premises for the purpose of performing work or for other lawful occasion;

"(2) Obstructing or attempting to obstruct, by massing of pickets or otherwise, freedom of movement on or along the public or private roads or ways in or about the Petitioner's premises, of the Petitioner, its employees, or any other persons who may pass or desire to pass on or along said roads or ways for the purpose of performing work or for other lawful occasion;

"(3) Obstructing or attempting to obstruct the free movement in, on or about the Petitioner's premises, of the Petitioner, its employees, or any other persons who may be in, on or about said premises for the purpose of performing work or for other lawful occasion;

"(4) Threatening violence to, intimidating, or coercing, or attempting to intimidate or coerce, the employees of the Petitioner or those seeking employment with the Petitioner, or any persons who are lawfully upon the Petitioner's premises or are proceeding to or from said premises;

"(5) Coercing or intimidating, or attempting to coerce or intimidate, employees of the Petitioner or those seeking employment with the Petitioner, by means of threats concerning the safety or welfare of the families of such employees or the .families of those seeking employment with the Petitioner; or threatening violence to, or coercing or intimidating, or attempting to coerce or intimidate, such families;

"(6) Without express written consent of the occupants thereof, visiting or being at or about the dwelling houses or residence premises belonging to Petitioner and occupied by employees of or persons seeking employment with Petitioner and thereat being offensive, disorderly, threatening or intimidating (in words or actions) towards, and harassing, such occupants, or any of them;

"(7) Mass picketing by assembling in compact groups or congregating in crowds on or near real property of the Petitioner, whether used for business or residence purposes, to thereby prevent or attempt to prevent or in any manner physically obstruct or interfere with ingress to or egress from said real property by Petitioner, any of its employees, or any other persons lawfully seeking to enter or leave any of said real property;

"And in furtherance hereof, you are hereby ordered to limit the number of pickets which you shall use to not more than three (3) pickets in a group at any point and station when stationed at points of ingress to and egress from the Petitioner's property, provided, however, that any pickets in excess of three (3) at any one point and station, shall be in motion and, except when passing each other, shall maintain a distance of not less than ten (10) feet between each other and such picketing as shall be done by them shall not be violative of any of the preceding restrictive provisions hereof; all pickets being hereby enjoined from picketing other than in a peaceful and lawful manner and from obstructing the Petitioner, its employees, or any other persons lawfully seeking to enter or leave the Petitioner's premises; and all pickets being also enjoined from otherwise committing any of the acts hereinbefore prohibited. Any persons engaged in such picketing as is not hereby restricted or prohibited shall wear arm bands reading 'Authorized Picket,' or 'U. P.'."

This Order, read without straining to find defects and ambiguities, is sufficiently clear and explicit as to what is prohibited to guide those affected if they gave it, as

they must, a fair reading. And it was not necessary for the court to translate its directions into various foreign languages. If such was necessary, that duty fell upon the Union, not the court.

This Order, intelligently read, in no way restrains plaintiffs' rights to freedom of speech or of assembly. Indeed, it does not even prohibit mass picketing. It simply restrains mass picketing at readily ascertainable and customary points of ingress and egress when such type picketing is for the purpose of interfering with the equally valuable rights of others—owners, employees and other persons lawfully entitled to enter or leave the property unmolested. A mass of pickets in the hundreds at the gates of company property so as to prevent others lawfully entitled to enter or leave is obviously not an exercise of the freedom of utterance, but is an endeavor by a show of physical force to prevent others from having the full advantage of their constitutional rights. The right to picket may not be so exercised that by physical force or position the rights of non-strikers to work and the rights of property owners to protect and maintain and even operate their property is denied.

Under neither the Constitution nor any Federal law is conduct such as that prohibited by the Order immunized from state or Territorial regulation and it was only such conduct that Judge Rice prohibited. He might even, without interfering with the right to picket peacefully, have deemed the situation to have warranted the prohibition of all mass picketing, but he saw fit only to regulate it at certain places when and only when it was conducted for the purpose or had the effect of blocking ingress and egress.

As a further means of controlling such conduct and assuring others of the full enjoyment of their rights, without danger of physical combat, Judge Rice ordered that at the usual points of ingress and egress the pickets be limited to three and at all other picket points or stations if more than three pickets were used, that they be in motion and at least ten feet apart. Plaintiffs claim that this limitation is unreasonable, that apparently Judge Rice deemed

two company but three a crowd. Small though the number is, especially in view of the size of the strike, I cannot find it to be an unreasonable regulation, especially as a temporary measure. The obvious purpose of the regulation again clearly appears to be to secure for others an adequate opportunity to utilize their rights without fear or obstruction, and to that end the Order prohibits those enjoined from blocking public and private roads and ways. Nor is there merit in the argument that the Order in restraining the International Union as well as its local unit is too general. To be effective, all acting in concert had to be enjoined.

Not only is this Restraining Order not void on its face, but going in back of it, as we may, to the picture of the situation described to Judge Rice by the affidavits and the testimony of the witnesses he heard, it stands revealed that the allegations of the petition were sufficiently supported to warrant the utilization by him of his court's equity powers. Granted that it was an ex parte hearing, as allowed by Territorial statute, Ch. 302, R.L.H.1945, it must still be remembered that this is a Temporary Restraining Order which at no time did plaintiffs or others restrained seek to have modified. They only attack the jurisdiction of the Territorial court. The situation made to appear to Judge Rice by affidavit and evidence was one of increasing tenseness lending reasonable credence to the belief that if things were allowed to continue, with ineffective police control, bloodshed might easily ensue. The described scene was one of mill and store entrances solidly blocked by hundreds of massed pickets preventing anyone from going in or out even for maintenance purposes, of plantation roads blocked, of homes picketed and families threatened, annoyed, and disturbed, and of a rising tempo of non-peace inducing language wherever pickets were assembled. When the record of the evidence presented to Judge Rice is read, it provides a further reason for holding his Order valid.

The Order in no way interferes with plaintiffs' or anyone else's right to assemble peaceably. It simply prohibits rea-

sonably picketing in large numbers, or the assembly of numerous persons for the purpose of blocking entrances and exits, public and private roads and ways so that others may not exercise their rights without fear or obstruction. The right of those on strike to assemble in order to hold a meeting or to hear those who wished to speak is not inhibited so long as that right is not exercised in such a way as to deny to others their rights.

So it is that upon the facts alleged—facts incidentally which do not support plaintiffs' argument that a conspiracy to deny plaintiffs their rights and to single them out for prosecution in order to intimidate others has been alleged in the complaint, and also as these facts are amplified by defendants' speaking motion—I find in point of law that plaintiffs' constitutional rights have not been invaded by the Amended Restraining Order.

There being no genuine issues of fact remaining to be tried, summary judgment for the defendants may be entered.

In the light of this disposition of the case, it is unnecessary to rule upon the question of whether if void the Rice Order would nevertheless support an indictment for contempt on the strength of the recent Lewis case (United States v. United Mine Workers of America), supra. Though unnecessary to decide, it may be remarked that it appears that there is no basis here for an application of the doctrine of Erie R. Co. v. Tompkins, 1936, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Waialua Agricultural Co. v. Christian, 1938, 305 U.S. 91, 59 S.Ct. 21, 83 L.Ed. 60, as this is not a diversity of citizenship case and involves no right dependent upon Territorial law. Whether or not the Territorial courts wish to change the Territorial law on the subject, as revealed by Dole v. Gear, 1903, 14 Haw. 554; Rose v. Ashford, 1915, 22 Haw. 469 and Sakan v. Ashford, 1916, 23 Haw. 267, in the light of what for Federal courts the Supreme Court has decided in the Lewis case is not for this court to determine.

The Preliminary Injunction is dissolved and a judgment for defendants may be entered.